**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-91 (RCL)** |
| | : | |
| **CRAIG MICHAEL BINGERT,** | : | |
| **ISAAC STEVE STURGEON, and** | : | |
| **TAYLOR JAMES JOHNATAKIS,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S SUPPLEMENTAL BRIEF ADDRESSING**
**18 U.S.C. § 1512(c)(2) AND *UNITED STATES V. MILLER***

On March 15, Defendant Isaac Sturgeon ("the Defendant") supplemented his earlier motion to dismiss (ECF No. 55) with a notice of an additional authority that, in his view, supports his dismissal motion (ECF No. 64). That additional authority, *United States v. Miller*, No. 21-cr-119, ECF No. 73, Order (D.D.C. Mar. 7, 2022), provides no sound reason to grant the Defendant's motion.

In *Miller*, Judge Nichols granted a motion to dismiss a count charging defendant Garret Miller with a violation of 18 U.S.C. § 1512(c)(2), which prohibits corruptly obstructing, influencing, or impeding an official proceeding. *Miller*, ECF No. 73. In Judge Nichols's view, a defendant violates Section 1512(c)(2) only when that individual "take[s] some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *United States v. Miller*, No. 21-cr-119, ECF No. 72, Memorandum Opinion (Mem. Op.) (D.D.C. Mar. 7, 2022). Because, according to Judge Nichols, the indictment did not allege or imply that Miller took any such action, Judge Nichols dismissed the count charging Section 1512(c)(2). *Id.* at 29.

The decision in *Miller* is flawed for two independent reasons. First, Judge Nichols erred

by applying the rule of lenity.  Rejecting an interpretation of Section 1512(c)(2)'s scope that every other member of this Court to have considered the issue and every reported case to have considered the issue (to the government's knowledge) has adopted, Judge Nichols found "serious ambiguity" in the statute.  Mem. Op. at 28.  The rule of lenity applies "'only if, after seizing everything from which aid can be derived,'" the statute contains "a '*grievous* ambiguity or uncertainty,'" and the Court "'can make no more than a guess as to what Congress intended.'"  *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (quoting *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998)) (emphasis added); *see also* Mem. Op. at 9 (citing "'grievous' ambiguity" standard).  Interpreting Section 1512(c)(2) consistently with its plain language to reach any conduct that "obstructs, influences, or impedes" a qualifying proceeding does not give rise to "serious" or "grievous" ambiguity.

Second, even if Judge Nichols's document-focused interpretation of Section 1512(c)(2) in *Miller* were correct, such that the government must prove that Miller "took some action with respect to a document," Mem. Op. at 29, Judge Nichols erred in dismissing the count charging a Section 1512(c)(2) violation (Count Three in *Miller*) in full based on the purported insufficiency of the indictment.  Count Three sufficiently alleged a violation of Section 1512(c)(2) by tracking the provision's "operative statutory text."  *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  The indictment did not need to more specifically allege that the obstruction took the form of taking some action with respect to a document.  In other words, the indictment's allegations, by charging the operative statutory text, permissibly embrace two theories: (1) that Miller obstructed an official proceeding by "tak[ing] some action with respect to a document," Mem. Op. at 28; and (2) that Miller obstructed an official proceeding without taking some action with respect to a document.  Judge Nichols's ruling finding the second theory invalid left the first

2

theory intact.  Moreover, Rule 12 of the Federal Rules of Criminal Procedure does not permit dismissal where, as here, additional facts would assist in resolving the pretrial motion. In particular, evidence at trial could establish the documents and records used in the Certification proceeding and prove that Miller's conduct had the natural and probable effect of destroying or imperiling those documents and records.  Because the indictment's allegations sufficiently charge the first theory that Miller obstructed the proceeding by taking action with respect to a document, Judge Nichols's should not have dismissed Count Three.

## I.       Relevant Background

On January 6, 2021, Sturgeon, along with Craig Michael Bingert ("Bingert") and Taylor James Johnatakis ("Johnatakis," collectively, "the defendants"), picked up a metal barricade and pushed it into police officers. The officers were attempting to prevent the defendants from gaining access to the Capitol grounds and building. At one point, the defendants managed to push the barricade far enough and high enough that they were able to duck underneath it. In response to the physical aggression, MPD officers used both physical force and chemical irritants to push back the defendants and stop the rioters from breaking through the line of officers.

On February 5, 2021, a grand jury returned an eight count indictment charging the defendants with the following charges: 18 U.S.C. §§ 1512(c)(2), 2 (obstruction of an official proceeding); 18 U.S.C. § 111(a)(1) (assaulting, resisting, or impeding certain officers); 18 U.S.C. § 231(a)(3) (civil disorder); 18 U.S.C. §§ 1752(a)(1), (2) and (4) (entering and remaining in a restricted building or grounds, disorderly and disruptive conduct in a restricted building or grounds, and engaging in physical violence in a restricted building or grounds); and 40 U.S.C. §§ 5104(e)(2)(E) and (F) (impeding passage through the capitol grounds or buildings and act of physical violence in the capitol grounds of buildings). *See* ECF No. 3.

On May 7, 2021, the grand jury returned a superseding indictment that updated the 18 U.S.C. § 111 language in Count Two. *See* ECF No. 34. On November 10, the grand jury returned a second superseding indictment, updating the language in Counts One and Three of the first superseding indictment. *See* ECF No. 53.

On December 7, 2021, Defendant Sturgeon filed his motion to dismiss Counts One, Three, Four, Five, and Six of the Superseding Indictment.[1] *See* ECF No. 55. After a consent motion for extension of time, the government filed its opposition on January 4, 2022. *See* ECF No. 60. Defendant Sturgeon filed his reply on January 11, 2022 (ECF No. 62) and a notice of additional authority supporting the motion to dismiss Count One, 18 U.S.C. §§ 1512, 2, on March 15, 2022 (ECF No. 64).

Congress enacted Section 1512 as a prohibition on "[t]ampering with a record or otherwise impeding an official proceeding" in Section 1102 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 807, and codified it in Chapter 73 of Title 18 of the United States Code, placing it within the pre-existing Section 1512 as subsection (c).  That prohibition applies to

(c) [w]hoever corruptly--

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.

18 U.S.C. § 1512(c).  In the *Miller* case, Count Three charged that on January 6, 2021, Miller "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's Certification of the Electoral College vote

---

[1] Defendant Craig M. Bingert moved to adopt and join the motion on December 13, 2021. *See* ECF No. 56. Defendant Taylor J. Johnatakis moved to join the motion on December 29, 2021. *See* ECF No. 59. This Court granted both motions. *See* ECF No. 61; January 28, 2022 Minute Order.

as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18." *United States v.* Miller, No. 21-cr-119, ECF No. 61, at 2-3 (D.D.C Nov. 10, 2021).  In this case, Count One of the Second Superseding Indictment similarly charges that, "on or about January 6, 2021," the defendants "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. § 15-18. *See* ECF No. 53.

Miller moved to dismiss Count Three on three grounds.  He argued that (1) the Certification of the Electoral College vote was not an "official proceeding"; (2) Section 1512(c)(2) did not apply to his alleged conduct because it is limited to conduct impairing the availability and integrity of evidence; and (3) Section 1512(c)(2) is unconstitutionally vague as applied to him.  *Id.*  Judge Nichols rejected the first argument, *see* Mem. Op. at 9-10, but agreed that Miller's alleged conduct did not fall within Section 1512(c)(2)'s scope, *id.* at 10-29.  Judge Nichols did not address Miller's third argument.

Focusing on the word "otherwise" in Section 1512(c)(2), Judge Nichols identified "three possible readings" of Section 1512(c)(2)'s scope.  Mem. Op. at 11.  First, Section 1512(c)(2) could serve as a "clean break" from Section 1512(c)(1), *id.* at 11-12, a reading that "certain courts of appeals have adopted," *id.* at 14. Judge Nichols, however, identified multiple "problems" with that interpretation, all focused on the interpretation of the term "otherwise."  Judge Nichols reasoned that reading "otherwise" in Section 1512(c)(2) to mean "in a different way or manner" is "inconsistent" with the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), which considered whether driving under the influence qualified as a "violent felony" under the now-defunct residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1).

5

Mem. Op. at 12-14.  Judge Nichols accordingly rejected the first interpretation.  *Id.* at 19-20.
Second, in Judge Nichols's view, Section 1512(c)(1) could "provide[] examples of conduct that
violates" Section 1512(c)(2).  *Id.* at 15-16.  Third, Section 1512(c)(2) could be interpreted as a
"residual clause" for Section 1512(c)(1), such that both provisions are linked by the document-
destruction and evidence-tampering "conduct pr[o]scribed by" Section 1512(c)(1).  *Id.* at 17.  After
considering Section 1512(c)'s structure, "historical development," and legislative history, Judge
Nichols found "serious ambiguity" as to which of the two "plausible" readings—the second and
third readings identified above—Congress intended.  Applying what Judge Nichols described as
principles of "restraint," he then interpreted Section 1512(c)(2) to mean that a defendant violates
the statute only when he or she "take[s] some action with respect to a document, record, or other
object in order to corruptly obstruct, impede, or influence an official proceeding" (the third
reading).  *Id.* at 28.  Because, in Judge Nichols's view, the indictment did not encompass an
allegation that Miller took any such action, Judge Nichols dismissed Count Three.  *Id.* at 29.

Both before and after the ruling in the *Miller* case, judges on this Court have rejected a
document-focused interpretation of Section 1512(c)(2).  In *United States v. Sandlin*, No. 21-cr-88,
2021 WL 5865006 (D.D.C. Dec. 10, 2021), the Honorable Dabney L. Friedrich found that Section
1512(c)(2)'s terms are "expansive and seemingly encompass all sorts of actions that affect or
interfere with official proceedings" and determined that the use of the word "otherwise" in Section
1512(c)(2) "clarifies" that it "prohibits obstruction by means *other than* document destruction*."*
*Id*. at *5-*6.  She did not view the Supreme Court's decision in *Begay* as altering that conclusion,
because *Begay* rested on the ACCA's different statutory language and history.  *Id.* at *6.  Judge
Friedrich also rejected the defendant's reliance on *Yates v. United States*, 574 U.S. 528 (2015)
(plurality opinion).  *Sandlin*, 2021 WL 5865006, at *6-*8.  Finally, Judge Friedrich concluded

that, although a plain-text construction of Section 1512(c)(2) creates "substantial overlap" with other provisions in Section 1512 and Chapter 73, it does not create "intolerable overlap." *Id.* at *7-*8 (citing *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part and dissenting in part)) (emphasis omitted).

Decisions from other judges on this Court before *Miller* followed suit.  For example, in *United States v. Caldwell*, No. 21-cr-28, 2021 WL 6062718 (D.D.C. Dec. 20, 2021), the Honorable Amit P. Mehta concluded that Section 1512(c)(2) is not "limited" to conduct "affecting the integrity or availability of evidence in a proceeding." *Id.* at *11 (brackets and internal quotation marks omitted); *see id.* at *11-*19 (addressing Section 1512(c)(2)'s text and structure, *Begay*, and *Yates*).  In *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891 (Dec. 21, 2021), the Honorable James E. Boasberg found persuasive the analysis in *Sandlin* and *Caldwell*.  *See id.* at *11.  In *United States v. Nordean*, 21-cr-175, 2021 WL 6134595 (D.D.C. Dec. 28, 2021), the Honorable Timothy J. Kelly reasoned that an interpretation of Section 1512(c)(2) limiting it to "impairment of evidence" could not "be squared with" Section 1512(c)(2)'s "statutory text or structure." *Id.* at *6; *see id.* at *6-*9 (addressing *Yates* and superfluity concerns).  And in *United States v. Montgomery*, 21-cr-46, 2021 WL 6134591 (D.D.C. Dec. 28, 2021), the Honorable Randolph D. Moss reached the same conclusion following an extended discussion of Section 1512(c)'s text, structure, and legislative history, as well as the *Begay* and *Yates* decisions.  *Id.* at *10-*18; *see also United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (Bates, J.) (reaching the same conclusion on the scope of Section 1512(c)(2)); *United States v. Grider*, 21-cr-22, 2022 WL 392307, at *5-*6 (D.D.C. Feb. 9, 2022) (Kollar-Kotelly, J.) (same).

Following Judge Nichols's decision in *Miller*, two judges on this Court have disagreed with the *Miller* analysis.  In denying a defendant's post-trial motion for acquittal under Rule 29 of

the Federal Rules of Criminal Procedure, Judge Friedrich indicated that she was "not inclined to reconsider" her ruling in *Sandlin* and described her points of disagreement with *Miller*. *United States v. Reffitt*, 21-cr-32, Trial Tr. 1502-05 (Mar. 8, 2022) (attached as Exhibit A). And in *United States v. Puma*, 21-cr-454, 2022 WL 823079 (D.D.C. Mar 19, 2022), the Honorable Paul J. Friedman concluded that the word "otherwise" in Section 1512(c)(2) "clarifies" that a defendant violates that section "through 'obstruction by means *other than* document destruction.'" *Id.* at *12 (quoting *Mostofsky*, 2022 WL 6049891, at *11). In reaching that conclusion, Judge Friedman rejected *Miller*'s "premise that any 'genuine ambiguity persist[s],'" *id.* at *12 n.4 (quoting Mem. Op. at 7), and therefore found the rule of lenity "inapplicable," *id.*

## II.    Argument

The ruling in *Miller* is flawed for two reasons. First, Judge Nichols erred by applying the rule of lenity to Section 1512(c)(2) because, as many other judges have concluded after examining the statute's text, structure, and history, there is no genuine—let alone "grievous" or "serious"—ambiguity. Second, even if Judge Nichols's narrow interpretation of Section 1512(c)(2)'s scope were correct, he erred by dismissing the Section 1512(c)(2) count in full because the indictment's allegations, by charging defendant using the statutory text, validly encompassed that narrower theory, particularly in light of proffered evidence that the government would adduce at trial. *See, e.g.*, *United States Firtash*, 392 F.Supp.3d 872, 887 (N.D. Ill. 2019) (upholding money laundering charge in indictment based in part on government's proffer of evidence regarding the nature of the financial transaction).

### A.  The Court's ruling erroneously applied the rule of lenity.

"When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83

(1955).  That principle underlies the "venerable" rule of lenity, Mem. Op. at 8 (quoting *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (en banc) (Bibas, J., concurring)), which ensures that "legislatures and not courts" define criminal activity given the "seriousness of criminal penalties" and the fact that "criminal punishment usually represents the moral condemnation of the community."  *United States v. Bass*, 404 U.S. 336, 348 (1971); *see Liparota v. United States*, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

The rule of lenity, however, does not come into play when a law merely contains some degree of ambiguity or is difficult to decipher.  The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended."  *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019).  In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork.  *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted).  "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be solved.'"  *Wooden*, 142 S. Ct. at 1074 (Kavanaugh, J., concurring) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

Judge Nichols erroneously applied the rule of lenity in *Miller*.  He referred to the "'grievous' ambiguity" standard when initially discussing the rule, *see* Mem. Op. at 9, and found "a serious ambiguity" regarding the conduct that Section 1512(c)(2) reaches, *id.* at 28; *see also id.*

at 22 ("[T]he Court does not believe that there is a single obvious interpretation of the statute.").
But Judge Nichols's interpretation of Section 1512(c)(2)'s scope places undue emphasis on a
single word ("otherwise") and a single Supreme Court decision (*Begay*) that interpreted that word
as used in an entirely different statute and statutory context.   A proper reading of Section
1512(c)(2)'s text, structure, and history demonstrates that Section 1512(c)(2) prohibits any corrupt
conduct that intentionally obstructs or impedes an official proceeding, not merely where a
"defendant ha[s] taken some action with respect to a document, record, or other object," *id.* at 28,
to corruptly obstruct an official proceeding.

Simply put, the rule of lenity is "inapplicable" here.   *Puma*, WL 823079, at *12 n.4.
Congress made clear in Section 1512(c)(2) that it sought to protect the integrity of official
proceedings—regardless of whether a defendant threatens such a proceeding by trying to interfere
with the evidence before that tribunal or threatens the tribunal itself.  Any such distinction between
these forms of obstruction produces the absurd result that a defendant who attempts to destroy a
document being used or considered by a tribunal violates Section 1512(c) but a defendant who
threatens to use force against the officers conducting that proceeding escapes criminal liability
under the statute.   Not only does the rule of lenity not require such an outcome, but such an
application loses sight of a core value that animates the lenity rule: that defendants should be put
on notice that their conduct is criminal and not be surprised when prosecuted.  *See Wooden*, 142
S. Ct. at 1082 (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by
ensuring that an individual's liberty always prevails over ambiguous laws.").   It would strain
credulity for any defendant who was focused on stopping an official proceeding from taking place
to profess surprise that his conduct could fall within a statute that makes it a crime to "obstruct[],
influence[], or impede[] [any] official proceeding or attempt[] to do so."  18 U.S.C. § 1512(c)(2).

Confirming the absence of ambiguity—serious, grievous, or otherwise—is that despite Section 1512(c)(2)'s nearly 20-year existence, no other judge has found ambiguity in Section 1512(c)(2), including eight judges on this Court considering the same law and materially identical facts. *See supra* at 5-6.

       1.   **Section 1512(c)(2)'s text and structure make clear that it covers obstructive conduct "other" than the document destruction covered in Section 1512(c)(1).**

While Section 1512(c)(1) prohibits the corrupt destruction or alteration of documents, records, and other objects in connection with an official proceeding, Section 1512(c)(2) prohibits corrupt conduct that "otherwise" obstructs, influences, or impedes an official proceeding. Before Judge Nichols's decision to the contrary, every reported case to have considered the scope of Section 1512(c)(2), *see* Gov't Supp. Br., *United States v. Miller*, No. 21-cr-119, ECF No. 74 (*Miller* Supp. Br.), at 7-9,[2] and every judge on this Court to have considered the issue in cases arising out of the events at the Capitol on January 6, 2021, *see supra* at 5-6, concluded that Section 1512(c)(2) "prohibits obstruction by means *other than* document destruction." *Sandlin*, 2021 WL 5865006, at *5. That conclusion follows inescapably from the text of Section 1512(c)'s two

---

[2] *See, e.g.*, *United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects about issuance of arrest warrants before "outstanding warrants could be executed, thereby potentially interfering with an ongoing grand jury proceeding"), *vacated on other grounds*, 139 S. Ct. 2772 (2019); *United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (defendant attempted to secure a false alibi witness while in jail for having stolen a vehicle); *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (defendant solicited information about a grand jury investigation from corrupt "local police officers'); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (defendant disclosed identity of an undercover officer, thus preventing him from making controlled purchases from methamphetamine dealers); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (false testimony before a grand jury); *United States v. Reich*, 479 F.3d 179, 185-87 (2d Cir. 2007) (Sotomayor, J.) (defendant an opposing part a forged court order that purported to recall and vacate a legitimate order, causing the opposing party to withdraw an application for a writ of mandamus).

subsections read together: Section 1512(c)(1) "describes how a defendant can violate the statute by 'alter[ing], destroy[ing], mutilat[ing], or conceal[ing]' documents for use in an official proceeding," *Puma*, 2022 WL 823079, at *12, while "otherwise" in Section 1512(c)(2) "signals a shift in emphasis . . . from actions directed at evidence to actions directed at the official proceeding itself," *Montgomery*, 2021 WL 6134591, at *12 (internal quotation marks omitted).

Judge Nichols was thus mistaken in concluding that this interpretation either "ignores" that "otherwise" is defined with reference to "something else," namely Section 1512(c)(1), or fails to "give meaning" to the term "otherwise." Mem. Op. at 12. Far from suggesting that Section 1512(c)(2) is "wholly untethered to" Section 1512(c)(1), *id.*, "otherwise" as used in Section 1512(c)(2) indicates that Section 1512(c)(2) targets obstructive conduct in a manner "other" than the evidence tampering or document destruction that is covered in Section 1512(c)(1). *See Miller* Supp. Br. at 8. That understanding of "otherwise" is both fully consistent with each definition Judge Nichols surveys, *see* Mem. Op. at 11 (noting that "otherwise" in Section 1512(c)(2) may plausibly be read as "in a different way or manner; differently"; "in different circumstances: under other conditions"; or "in other respects") (internal quotation marks omitted), and ensures that the term is not rendered "pure surplusage," *id.* at 12. In sum, "otherwise" makes clear that Section 1512(c)(1)'s scope encompasses document destruction or evidence tampering that corruptly obstructs an official proceeding, while Section 1512(c)(2)'s ambit includes "other" conduct that corruptly obstructs an official proceeding.

The fact that some cases "could be brought under either or both prongs of Section 1512(c)," *Montgomery*, 2021 WL 6134591, at *12, does not imply that Section 1512(c)(2) "would have the same scope and effect . . . if Congress had instead omitted the word 'otherwise,'" Mem. Op. at 12. For one thing—and as noted in the government's supplemental brief in *Miller*, *see Miller* Supp.

Br. at 11-13—overlap is "not uncommon in criminal statutes," *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014), and Section 1512(c)(2)'s broader language effectuates its design as a backstop in the same way that a "generally phrased residual clause . . . serves as a catchall for matters not specifically contemplated." *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009).  Moreover, interpreting the interplay of Sections 1512(c)(1) and 1512(c)(2) in this way does not foreclose a defendant from arguing that his conduct falls outside Section 1512(c)(2)'s scope because his document destruction or evidence concealment is prohibited and punishable only under Section 1512(c)(1).  To be sure, practical considerations may militate against seeking such a potentially Pyrrhic victory—where success leads to reindictment under Section 1512(c)(1)—but those practical considerations provide no reason to reject the straightforward interpretation of Section 1512(c) as divided between a provision that targets evidence destruction (Section 1512(c)(1)) and a provision that applies to "otherwise" obstructive conduct (Section 1512(c)(2)).  And, in any event, the "mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either." *Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005).

Judge Nichols further concluded that interpreting "otherwise" in the manner described above is "inconsistent" with *Begay*, where, in the Court's view, analysis of what "'otherwise' meant" was "[c]rucial" to the Supreme Court's analysis. Mem. Op. at 12.  That conclusion is flawed in several respects.  First, in considering whether driving under the influence was a "violent felony" for purposes of the ACCA's residual clause, which defines a "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury," 18 U.S.C. § 924(e)(2)(B)(ii), the Supreme Court in *Begay* addressed a statutory provision that has an entirely different structure than Section 1512(c)(2). *See Sandlin*, 2021 WL 5865006, at *6 (distinguishing *Begay* on the ground that, unlike

the ACCA residual clause, the "otherwise" in Section 1512(c)(2) is "set off by both a semicolon and a line break"); *United States v. Ring*, 628 F.Supp.2d 195, 224 n.17 (D.D.C. 2009).  Unlike in the ACCA residual clause, the "otherwise" phrase in Section 1512(c)(2) "stands alone, unaccompanied by any limiting examples."[3] *Ring*, 628 F.Supp.2d at 224 n.17.  In other words, the "key feature" in Section 924(e)(2)(B)(ii) at issue in *Begay*, "namely, the four example crimes," 553 U.S. at 147, is "absent" in Section 1512(c)(2).  *Caldwell*, 2021 WL 6062718, at *14.  Although Judge Nichols recognized the structural difference between the ACCA residual clause and Section 1512(c)(2), *see* Mem. Op. at 18-19, he offered no reason to import *Begay*'s interpretation of "otherwise" to Section 1512(c)(2)'s differently structured provision.

Second, describing the Supreme Court's interpretation of "what 'otherwise' meant" as "[c]rucial" to that Court's decision in *Begay* is an inaccurate description of *Begay*'s analysis.  The majority in *Begay* noted first that the "listed examples" in Section 924(e)(2)(B)(ii)—burglary, arson, extortion, or crimes involving explosives—indicated that the ACCA residual clause covered only similar crimes.  *Begay*, 553 U.S. at 142.  Those examples, the majority reasoned, demonstrated that Section 924(e)(2)(B)(ii) was not designed "to be all encompassing," but instead to cover only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves."  *Id.* at 142-43.  The majority next drew support for its conclusion from Section 924(e)(2)(B)(ii)'s history, which showed that Congress both opted for the specific examples in lieu of a "broad proposal" that would have covered offenses involving the substantial

---

[3] The Court suggested (Mem. Op. at 15-16) that "[t]he government also presents an alternative reading" that Section 1512(c)(1) "provides examples of conduct that violates" Section 1512(c)(2).  *Id.* at 15.  That is incorrect.  Neither the government nor Miller nor (to the government's knowledge) any court has proposed or adopted that construction of Section 1512(c)(2).  Considering an interpretation that no party advocates and no court has adopted injects the kind of "front-end ambiguity" that "lead[s] to significant inconsistency, unpredictability, and unfairness in application."  *Wooden*, 142 S. Ct. at 1076 (Kavanaugh, J., concurring).

use of physical force and described Section 924(e)(2)(B)(ii) as intending to encompass crimes "similar" to the examples. *Id.* at 143-44. In the final paragraph of that section of the opinion, the majority addressed "otherwise," noting that the majority "[could ]not agree" with the government's argument that "otherwise" is "*sufficient* to demonstrate that the examples do not limit the scope of the clause" because "the word 'otherwise' *can* (we do not say *must*, cf. *post* at [150-52] (Scalia, J. concurring in judgment)) refer to a crime that is similar to the listed examples in some respects but different in others." *Id.* at 144.

A tertiary rationale responding to a party's argument where the majority refrains from adopting a definitive view of "otherwise" cannot be described as "crucial." The majority's "remarkably agnostic" discussion of "otherwise" in *Begay* explicitly noted that the word may carry a different meaning where (as here) the statutory text and context suggests otherwise. *Montgomery*, 2021 WL 6134591, at *11; *see Caldwell*, 2021 WL 6062718, at *14 (declining to depart from the "natural reading" of "otherwise" as "'in a different way or manner'" based on the discussion in *Begay*). In short, the majority in *Begay* "placed little or no weight on the word 'otherwise' in resolving the case." *Montgomery*, 2021 WL 6134591, at *11.

Third, whatever the significance of the majority's interpretation of "otherwise" in *Begay*, *Begay*'s ultimate holding demonstrates why no court should embark on imposing an extra-textual requirement within Section 1512(c)(2). The Supreme Court held in *Begay* that Section 924(e)(2)(B)(ii) encompasses only crimes that, similar to the listed examples, involve "purposeful, violent, and aggressive conduct." 553 U.S. at 144-45. But "*Begay* did not succeed in bringing clarity to the meaning of the residual clause." *Johnson v. United States*, 576 U.S. 591, 600 (2015). Just as the *Begay* majority "engraft[ed]" the "purposeful, violent, and aggressive conduct" requirement onto the ACCA's residual clause, 553 U.S. at 150 (Scalia, J., concurring in judgment)

(internal quotation marks omitted), so too Judge Nichols engrafted onto Section 1512(c)(2) the requirement that a defendant "have taken some action with respect to a document, record, or other object" to obstruct an official proceeding, Mem. Op. at 28.  In the nearly 20 years since Congress enacted Section 1512(c)(2), no reported cases have adopted Judge Nichols's interpretation, and for good reason.  That interpretation would give rise to unnecessarily complex questions about what sort of conduct qualifies as "taking some action with respect to a document" in order to obstruct an official proceeding.  *Cf. United States v. Singleton*, No. 06-cr-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished) (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-cr-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceedings [*sic*] through his conduct in relation to a tangible object").[4]  In brief, Judge Nichols's interpretation is likely to give rise to the very ambiguity it purports to avoid.

Judge Nichols's observation that only "certain courts of appeals," Mem. Op. at 14, have interpreted Section 1512(c)(2) to reach conduct that obstructs an official proceeding other than document destruction significantly understates the case law.  Every reported case—both in the

---

[4] Judge Nichols's interpretation of Section 1512(c)(2) resembles the reading given in *Singleton* and *Hutcherson*, both of which are unpublished and neither of which the Miller ruling cites.  As noted in the main text, no other court, at least in a reported opinion, appears to have adopted the nexus-to-tangible-evidence-or-a-tangible-object standard articulated in *Singleton* and *Hutcherson*. *See United States v. De Bruhl-Daniels*, 491 F.Supp.3d 237, 250-51 (S.D. Tex. 2020) (identifying *Singleton* and *Hutcherson* as outliers from the "most popular—and increasingly prevalent— interpretation of § 1512(c)(2) [as] an unlimited prohibition on obstructive behavior that extends beyond merely tampering with tangible items"); *Ring*, 628 F.Supp.2d at 225 n.18 (disagreeing with *Singleton* and *Hutcherson* but finding that the alleged conduct at issue in that case involved "some nexus to documents").  No court of appeals has cited either case.

courts of appeals and in district courts—has interpreted Section 1512(c)(2) in that manner. *See Miller* Supp. Br.at 7-9 (discussing cases). Moreover, the Court's effort to distinguish one of those cases, *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015), misses the mark. That *Petruk* did not cite or discuss *Begay*, Mem. Op. at 14, says nothing about the logic of its analysis, particularly given how "remarkably agnostic" *Begay*'s discussion of "otherwise" is. *See Montgomery*, 2021 WL 6134591, at *11. The Court likewise faulted *Petruk* for misreading the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995), where the Supreme Court interpreted the omnibus clause in 18 U.S.C. § 1503 to require a "relationship in time, causation, or logic," *id.* at 599, between the obstructive conduct and the proceeding—a grand jury investigation—at issue in the defendant's case. But the restraint the Supreme Court exercised by interpreting Section 1503 to require that "nexus" is paralleled by interpreting the same nexus requirement to apply to Section 1512(c)(2)—as other judges on this Court have done, *see Miller* Supp. Br. at 20-22 (explaining that the nexus requirement applies to Section 1512(c)(2)); *Montgomery*, 2021 WL 6134591, at *20-*21—and not by imposing an additional, atextual requirement that a defendant must "have taken some action with respect to a document" for his conduct to fall within the scope of Section 1512(c)(2).[5]

### 2. Other tools of statutory interpretation do not undermine that straightforward reading.

Because Section 1512(c)(2)'s text and context make clear that it reaches conduct that

---

[5] Judge Nichols's similar criticism of *United States v. Burge*, 711 F.3d 803 (7th Cir. 2013), Mem. Op. at 15 n.7, fails for the same reason. And Judge Nichols's related criticism that *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014), which relied in part on *Burge*, "did not even involve a prosecution under § 1503, let alone § 1512(c)(2)," Mem. Op. at 15 n.7, falls short. The defendants in *Volpendesto* were prosecuted for, among other things, conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k), and the jury was instructed on the elements of 18 U.S.C. § 1512(c)(2). *See United States v. Volpendesto*, 08-cr-115, Dkt. No. 518, at 88-95 (N.D. Ill. Dec. 22, 2010).

obstructs, influences, or impedes an official proceeding in a manner other than document destruction or evidence tampering, resorting to other tools of statutory interpretation is not necessary.   In any event, those tools reinforce that straightforward interpretation of Section 1512(c)(2)'s scope.  *See Miller* Supp. Br. at 9-17.  In reaching a contrary conclusion, Judge Nichols erred in several respects.

First, Judge Nichols suggested that reading Section 1512(c)(2) consistently with its plain language and structure as described above would "introduce something of an internal inconsistency" because Section 1512(c)(2) would have greater breadth than neighboring provisions in Section 1512.  Mem. Op. at 21; *see id.* (describing Section 1512(c)(2) as an "elephant[] in [a] mousehole[]").  That reasoning is inconsistent with *Yates*, where a plurality of the Supreme Court recognized that Section 1512 consisted of "broad proscriptions," not "specialized provisions expressly aimed at corporate fraud and financial audits."  574 U.S. at 541 (plurality opinion).  Moreover, the narrowing construction Judge Nichols imposed on Section 1512(c)(2) fails to consider that Section 1512(c)(2) reaches more broadly precisely because other provisions within Section 1512 leave gaps that Section 1512(c)(2) fills.  *Cf. Catrino v. United States*, 176 F.2d 884, 887 (9th Cir. 1949) ("The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.").

Second, Judge Nichols worried that a reading of Section 1512(c)(2) that encompasses obstructive conduct unrelated to documents or records would give rise to "substantial superfluity problems."  Mem. Op. at 21.  But even a "broad interpretation of § 1512(c)(2) does not entirely subsume numerous provisions within the chapter," and any overlap with other provisions in

Section 1512 is "hardly remarkable." *Sandlin*, 2021 WL 5865006, at *8; *accord Nordean*, 2021 WL 6134595, at *8. More troubling, by interpreting Section 1512(c)(2) to require "some action with respect to a document," Mem. Op. at 28, Judge Nichols risks rendering Section 1512(c)(2) itself superfluous in light of the "broad ban on evidence-spoliation" in Section 1512(c)(1), *Yates*, 574 U.S. at 541 n.4 (plurality opinion) (internal quotation marks omitted). Moreover, because Section 1512(c)(1) includes both completed and *attempted* evidence tampering, *see* 18 U.S.C. § 1512(c)(1) (reaching "[w]hoever corruptly . . . alters, destroys, mutilates, or conceals a record, document, or other object, *or attempts to do so*) (emphasis added), it is unlikely that a defendant who "take[s] some action with respect to a document, record, or other object," Mem. Op. at 28, has not also taken a "substantial step" toward altering, destroying, mutilating, or concealing that document sufficient to fall within the scope of Section 1512(c)(1). *See United States v. Hite*, 769 F.3d 1154, 1162 (D.C. Cir. 2014) (explaining that the "general meaning of 'attempt' in federal criminal law" is "an action constituting a 'substantial step' towards commission of a crime and performed with the requisite criminal intent").

The canon against superfluity, which is "strongest when an interpretation would render superfluous another part of the same statutory scheme," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013), is even stronger when it renders superfluous "other provisions in the *same enactment*." *Freytag v. Comm'r*, 501 U.S. 868, 877 (1991) (emphasis added; internal quotation marks omitted); *cf. Yates*, 574 U.S. at 543 (plurality opinion) ("We resist a reading of § 1519 that would render superfluous an entire provision passed . . . as part of the same Act."). That principle comes into play here because Sections 1512(c)(1) and 1512(c)(2) were enacted together as part of the Sarbanes-Oxley Act. *See Miller* Supp. Br. at 15-16.

Third, Judge Nichols's discussion of statutory and legislative history, Mem. Op. at 23-28,

provides no sound reason to deviate from the straightforward interpretation of Section 1512(c)(2) described above.  For example, Judge Nichols suggested that Congress would have had no reason to add Section 1512(a)(2)(B) three months after enacting Section 1512(c)(2) if the latter provision were construed broadly.  Mem. Op. at 25.  Section 1512(a)(2)(B) prohibits the use or threatened use of physical force against "any person" with the intent to "cause or induce any person" to take one of four actions, including "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] an object with intent to impair the integrity or availability of the object for use in an official proceeding."  18 U.S.C. § 1512(a)(2)(B)(ii).  But as Judge Nichols noted, Mem. Op. at 21 & 23, unlike Section 1512(a)(2)(B), Section 1512(c) aimed generally to impose "direct" liability for obstructive conduct that was not directed at intimidating or influencing another person, *see Miller* Supp. Br. at 16.[6] Understood in that light, Section 1512(a)(2)(B) operates harmoniously with both subsections in Section 1512(c): Section 1512(a)(2)(B)(ii) reaches a defendant's use of force or threatened use of force at *another person* in order to cause that person to destroy documents in connection with an official proceeding; Section 1512(c)(1) reaches a defendant's direct destruction of documents in connection with an official proceeding; and Section 1512(c)(2) reaches a defendant's non-document-related conduct that obstructs or impedes an official proceeding.  And while the legislators who enacted Section 1512(c) in the Sarbanes-Oxley Act undoubtedly had document shredding foremost in mind, *see* Mem. Op. at 26-28; *accord Miller* Supp. Br. at 15 (noting floor

---

[6] Judge Nichols suggested (Mem. Op. at 22 n.10) that Section 1512(c)(2) could be read as "creating 'direct' liability for the other types of conduct covered by § 1512—that is, that it makes criminal an individual doing directly those things for which the rest of § 1512 requires action directed at another person."  Although the government's supplemental brief described Section 1512(c)(2) in those terms, *see Miller* Supp. Br. at 16 ("Section 1512(c) aimed at closing a 'loophole' in Section 1512: the existing prohibitions did not adequately criminalize a defendant's *personal* obstructive conduct *not* aimed at another person."), Judge Nichols decided (Mem. Op. at 22 n.10) "not [to] address" the interpretation "further" because "[n]either party presses this argument (or anything like it)."

statements addressing concern about document shredding in the *Arthur Andersen* prosecution), "it is unlikely that Congress was concerned with only the type of document destruction at issue in the *Arthur Andersen* case." *Montgomery*, 2021 WL 6134591, at *16. In other words, "there is no reason to believe that Congress intended to fix that problem only with respect to 'the availability or integrity of evidence.'" *Id.*

Finally, an interpretation of Section 1512(c)(2) that imposes criminal liability only when an individual takes direct action "with respect to a document, record, or other object" to obstruct a qualifying proceeding leads to absurd results. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (rejecting interpretation of a criminal statute that would "produce results that were not merely odd, but positively absurd"). That interpretation would appear, for example, not to encompass an individual who seeks to "obstruct[], influence[], or impede[]" a congressional proceeding by explicitly stating that he intends to stop the legislators from performing their constitutional and statutory duties to certify Electoral College vote results by "drag[ging] lawmakers out of the Capitol by their heels with their heads hitting every step," *United States v. Reffitt*, No. 21-cr-32, Trial Tr. 1502, carrying a gun onto Capitol grounds, *id.* at 1499, and then leading a "mob and encourag[ing] it to charge toward federal officers, pushing them aside to break into the Capitol," *id.* at 1501-02, unless he also picked up a "document or record" related to the proceeding during that violent assault. The statutory text does not require such a counterintuitive result.

## B. Even if the Court's interpretation of Section 1512(c)(2)'s scope were correct, pretrial dismissal based on the indictment's allegations is premature.

Even if Judge Nichols's interpretation of Section 1512(c)(2)'s scope were correct (though it is not), dismissal of the count charging Section 1512(c)(2) in full is improper under Rules 7 and 12 of the Federal Rules of Criminal Procedure.

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'"  *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).  And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed."  *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*."  Fed. R. Crim. P. 12(b)(1) (emphasis added).  It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a full proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005)—neither of which has occurred here.  Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial."  *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

Although the defendant in *Miller* styled his challenge to Section 1512(c)(2)'s scope as an attack on the indictment's validity, the scope of the conduct covered under Section 1512(c)(2) is distinct from whether Count Three in *Miller* adequately states a violation of Section 1512(c)(2).[7]

---

[7] Although Miller argued that the indictment must contain "some allegation" that his conduct "undermined an official proceeding's 'truth-finding function through actions impairing the

In *Miller*, Count Three of the indictment put the defendant in *Miller* on notice as to the charges against which he must defend himself, while also encompassing both the broader theory that a defendant violates Section 1512(c)(2) through any corrupt conduct that "obstructs, impedes, or influences" an official proceeding *and* the narrower theory that a defendant must "have taken some action with respect to a document," Mem. Op. at 28, in order to violate Section 1512(c)(2). Judge Nichols's conclusion that only the narrower theory is a viable basis for conviction should not result in dismissal of the count charging a violation of Section 1512(c)(2); instead, Judge Nichols would properly enforce that limitation by permitting conviction on that basis alone. *See United States v. Ali*, 885 F.Supp.2d 17, 33 (D.D.C. 2012) (limiting the government's aiding and abetting theory under 18 U.S.C. § 1651 to acts of piracy committed while the defendant was on the high seas but not dismissing the count), *reversed in part by* 718 F.3d 929, 941 (D.C. Cir. 2013) (disagreeing with the district court's limitation on aiding and abetting liability under Section 1651). Critically, cases involving successful challenges by defendants concerning whether their *conduct*—and not merely the allegations against them—falls within the scope of the charged statute arise not under Rule 12 but following trials that establish the evidentiary record necessary to determine precisely what the defendant's conduct entailed. *See, e.g.*, *Marinello v. United States*, 138 S. Ct. 1101, 1105 (2018) (considering scope of 26 U.S.C. § 7212(a) following defendant's conviction at trial); *Yates*, 574 U.S. at 534-35 (plurality opinion) (considering scope of the phrase "tangible object" in 18 U.S.C. § 1519 following defendant's conviction at trial); *Aguilar*, 515 U.S. at 597 (considering scope of omnibus clause in 18 U.S.C. § 1503 following the defendant's conviction at trial).

It is clear why that is so. Even assuming the Judge Nichols's interpretation of Section

---

integrity and availability of evidence," *United States v. Miller*, No. 21-cr-119, ECF No. 59, at 7, Judge Nichols's ruling does not appear to announce a new rule that his narrowed interpretation of Section 1512(c)(2)'s scope creates a new offense *element* that must be alleged in an indictment.

1512(c)(2) were correct, and that the government therefore must prove "Miller took some action with respect to a document, record, or other object in order to corruptly obstruct, impede[,] or influence Congress's certification of the electoral vote," Mem. Op. at 29, no court could ascertain whether a defendant's conduct meets that test until after a trial, at which the government is not limited to the specific allegations in the indictment.  And at trial, the government could prove that the Certification proceeding "operates through a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections."  *Miller* Supp. Br. at 41.  For example, evidence would show Congress had before it boxes carried into the House chamber at the beginning of the Joint Session that contained "certificates of votes from the electors of all 50 states plus the District of Columbia."  *Reffitt*, *supra*, Trial Tr. at 1064 (Mar. 4, 2022) (testimony of the general counsel to the Secretary of the United States Senate) (attached as Exhibit B).  Evidence would further show that, as rioters began to breach the restricted area around the Capitol building and grounds on January 6, 2021, legislators were evacuated from the House and Senate chambers, and the staff for the Secretary of the United States Senate "took the ballot boxes and other paraphernalia of the proceeding" out of the chamber "to maintain custody of the ballots and make sure nothing happen[ed] to them."  *Id.* at 1072.

Additional evidence could establish that a defendant's conduct had the "natural and probable effect," *Aguilar*, 515 U.S. at 599 (internal quotation marks omitted), of destroying or imperiling the ballots and "other paraphernalia" from the Certification proceeding.  Although the government does not anticipate presenting evidence that the defendants envisioned placing or in fact placed hands on a document or record connected to the Certification proceeding, their participation in a violent confrontation on the West Terrace of the U.S. Capitol grounds in which they picked up a gate and pushed it into police officers restricting access to the Capitol grounds

and building contributed to the chaos that led to the evacuation of lawmakers, the entrance of a Capitol police officer with a "very long, very large long gun" onto the Senate floor, and the scramble to remove the sealed electoral ballots to safety.  *Reffitt*, *supra*, Trial Tr. at 1071-72.  In that respect, the defendants here "took" many "action[s]" with respect to Congress's consideration of documents and records central to the Certification proceeding and thereby corruptly obstructed and impeded that Certification proceeding, including blocking lawmakers from considering such documents and records.  In acting to thwart the commencement and operation of an official proceeding that involved such documents, the evidence will establish that the defendants in this case violated Section 1512(c)(2) even under an interpretation of Section 1512(c)(2) that requires "some nexus to tangible evidence," *Singleton*, 2006 WL 1984467, at *3, or some "conduct in relation to a tangible object," *Hutcherson*, 2006 WL 270019, at *2; or that the defendants "have taken some action with respect to a document, record, or other object" to obstruct an official proceeding, Mem. Op. at 28.

III.    **Conclusion**

For the foregoing reasons and those given in the government's prior opposition, the Court

should not dismiss the Count One of the Second Superseding Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:        */s/ Angela N. Buckner*
Angela N. Buckner
DC Bar #1022880
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (202) 252-2656

*/s/ James I. Pearce*
James I. Pearce
Appellate Counsel to the Capitol Siege
Section
United States Attorney's Office
NC Bar No. 44691
555 Fourth Street, N.W.
Washington, DC 20530
James.Pearce@usdoj.gov
(202) 532-4991