UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.             )<br>)<br>ISAAC STEVE STURGEON,  )<br>)<br>Defendant.  )<br>_____ ) | No. 21-091 (RCL) |

**MOTION TO SEVER MR. STURGEON'S TRIAL FROM THOSE
OF HIS CO-DEFENDANTS**

Defendant, Isaac Sturgeon, through counsel, respectfully moves this Court, pursuant to Fed. R. Crim. P. 8(b), Rule 14, and other applicable law, to sever his trial from those of his co-defendants.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Sturgeon, along with two other co-defendants, Craig Bingert and Taylor Johnatakis, were indicted for one count of Obstruction of an Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. §1512(c)(2) and (2), one count of Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. §111(a)(1), one count of Civil Disorder in violation of 18 U.S.C. §231(a)(3), three counts of 18 U.S.C. §1752(a)(1)(2), and (4), and two counts of 40 U.S.C. §5104(e)(2)(E) and (F). *See* ECF Dkt. No. 53.

Despite the lack of connection between Mr. Sturgeon and his two co-

defendants, the government has grouped them together in a single indictment. These charges are based on allegations arising out of the events on January 6, 2021. The government accuses all three defendants of picking up a gate and pushing it in the direction of officers on the grounds of the Capitol building. The government specifically alleges that Mr. Johnatakis waved a member of the mob forward toward the barricaded line of MPD officers while using a bullhorn to encourage rioters to "push them out of here, we're just using our bodies!" *See* Gov. Opposition to Defendant's Motion to Dismiss at pg. 6, ECF No. 60. The government further alleges that Mr. Johnatakis then directed the "other rioters" to push the barricades into the MPD officers, encouraging them as they progressed, yelling "one foot," and "1,2,3, go." *Id*. The only connection to the other defendants, Mr. Sturgeon and Mr. Bingert, is that they were standing to the right of Mr. Johnatakis and that they allegedly used their hands to also grab the metal barricade.

The government has not alleged that these three defendants know each other or that they even communicated during the events on January 6, 2021. The government only alleges that Mr. Johnatakis was encouraging the whole crowd of rioters – but not that he specifically encouraged Mr. Sturgeon and Mr. Bingert. There is also no evidence that Mr. Bingert ever communicated with Mr. Sturgeon. There is no evidence that these three individuals acted in unison when allegedly grabbing the metal barricade. In fact, there are several other individuals who were on the front line in front of the barricade – yet those individuals are not included in

this indictment.

## ARGUMENT

These three co-defendants are improperly joined as there is no connection between them other than their mere proximity to one another. There is a real danger that the jury will be confused by a joined trial and fail to consider the evidence against Mr. Sturgeon separately from Mr. Bingert and Mr. Johnatakis. Government concerns of judicial economy are substantially outweighed by the prejudice that will result to Mr. Sturgeon if a joint trial occurs.

### I.   The defendants are improperly joined under Rule 8(b)

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of defendants *only* if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). To properly join defendants in this District, the government must sufficiently demonstrate "the existence of a common scheme or plan spanning both transactions *and* both defendants." *United States v. Perry*, 731 F.2d 985, 991 (D.C. Cir. 1984) (emphasis added).

#### A. There is an insufficient nexus to support the joinder of Mr. Sturgeon with his other co-defendants.

It is settled law that each defendant must be logically relevant to each of their co-defendants and that our system does not tolerate or invite "mass trial by conduct" as that "way lies the drift toward totalitarian institutions." *Kotteakos v. U.S.*, 328 U.S. 750, 773 (1946). In *Kotteakos*, the Supreme Court reversed a conviction based on improper joinder of the defendant to others in a fraud

conspiracy when the only nexus among them "lies in the fact that one man participated in all." *Id*. It is also well settled D.C. Circuit law that there must be a logical relationship between the acts or transactions. *See Perry*, 731 F.2d at 990; see also *United States v. Jackson*, 562 F.2d 789, 796 (D.C. Cir. 1977) ("[I]f acts were part of a common scheme or plan, or connected together, they could be regarded as a series.").

As an initial matter, Mr. Sturgeon is not charged with conspiracy and the only connection he has to the other co-defendants was his proximity to them on the Capitol Grounds. Unlike other charged January 6 conspiracies, these joined defendants had no shared plans or agreements regarding their conduct that day, traveling from different parts of the country and not knowing each other even while on the Capitol Grounds. There is no evidence that they met up that day or on the Grounds and exchanged words indicating any agreement. The government's only claim for joinder is their speculative allegation that in response to Mr. Johnatakis's statements to the entire crowd – that Mr. Sturgeon and Mr. Bingert had somehow telepathically made an agreement to follow his words. Mr. Sturgeon did not even utter a single word to Mr. Bingert or Mr. Johnatakis and was standing solo the entire time.

Because Mr. Sturgeon's alleged actions were separate from the other co-defendants, these parties are improperly joined. In *Jackson*, the D.C. Circuit court agreed that the defendants' presence at the approximate time and place of the alleged crime was insufficient for joinder when the government failed to establish

any logical link between the two offenses. *Jackson*, 562 F.2d at 797. Similarly, the government here has not established a logical link connecting Mr. Sturgeon's alleged actions to the other two-defendant's alleged actions – other than that all three defendants allegedly committed the same offense. If that theory were to prevail, then hundreds of defendants in that area within an ear shot of Mr. Johnatakis should have also been included in this indictment. For example, in a case cited favorably in *Jackson*, the Fourth Circuit observed:

> The government did not meet its burden of proving that there was any connection between the appellant's offense and Meredith's offense. Carried to its logical conclusion, the government's theory might well allow us to join in a common indictment and trial of two delinquent taxpayers who used the same accountant. Such a result approaches the ridiculous.

*United States v. Whitehead*, 539 F.2d 1023, 1025 (4th Cir. 1976). *See also Jackson*, 562 F.2d at 796 (citing to *Whitehead* for proposition quoted).

The government has also failed to establish why it needs to join these defendants to prove its case against each co-defendant. These offenses are not intertwined and have no bearing on one another.

### B. The conduct alleged against Mr. Sturgeon and the other two co-defendants was not part of the same "transaction" within the meaning of Rule 8(b).

Rule 8 was designed to promote judicial economy through the aggregation of related claims.[1] However, it must be clear that efficiencies actually exist and "where… there are no presumptive benefits from joint proof of facts relevant to all

---

[1] *See* Edward Q. Carr, Some Aspects of Joinder of Causes, 5 Fordham L.R. 452, 457 (1936).

the acts or transactions…Rule 8(b) comes to an end, and joinder is impermissible. *Perry*, 731 F.2d at 990-91 (quoting *Jackson*, 562 F.2d at 794-95). While promoting judicial economy applies to both civil and criminal cases, the D.C. Circuit observed that in criminal cases, "solicitude for efficient judicial administration must sometimes give way to the need to protect the rights of defendants." *Jackson*, 562 at 799.

Because the potential for prejudice in the criminal context is high, the efficiency of joinder must typically be evident from the face of the indictment, as in the case of conspiracy, or clearly established in pre-trial proceedings. *See, e.g., id*; *see also Perry*, 731 F.2d at 990 ("Quite obviously, the indictment might satisfy this requirement, for instance when a conspiracy charge links all of the offenses and defendants. Unlike a common conspiracy charge that ties all of the defendants and charges together, the government cannot identify a common scheme or plan between these three defendants. To argue that Mr. Johntakis's alleged encouragement to the crowd demonstrates this common scheme or plan is clearly insufficient without some other logical link between the defendants and would create an absurd result – permitting joinder of hundreds of January 6 defendants that day. *See United States v. Nicely*, 922 F.2d 850, 854 (criticizing the government's "tenuous connection" and use of the word "symbiotic" comparing it to "a hippopotamus and the small bird that eats ticks off its hide").

> II. **Even if the Court finds that joinder is appropriate, the Court should still sever Mr. Sturgeon's trial from his co-defendants to protect his substantive rights.**

Rule 14(a) makes it clear that the court may sever the defendants' trial if "the joinder of offenses in an indictment…appears to prejudice a defendant." Fed. R. Crim. P. 14(a). The Supreme Court has observed that severance of properly joined defendants is appropriate where, as here, there the dangers for "transference of guilt from one defendant to another…are so great that no one can really say prejudice to a substantial right has not taken place." *Kotteakos*, 328 U.S. at 750; *See also Nicely*, 922 F.2d at 853 (there are definite limits to what the government can put together in a single indictment). The D.C. District Court reiterated the Supreme Court's concerns that this risk is "heightened" when, for example, "many defendants are tried together…and they have markedly different degrees of culpability." *United States v. Franklin*, 2005 WL 8157514 *2 (D.D.C. Dec. 16, 2005) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). In *Franklin*, the district court also observed the D.C. Circuit's instruction that severance is required when "evidence against one defendant is far more damaging than the evidence against the other defendants." *Id*. at *3 (quoting *United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991)).

There is no doubt here that Mr. Johnatakis's allegations and evidence against him bear a far greater degree of culpability than for Mr. Sturgeon. Johnatakis is alleged to be on video surveillance encouraging the crowd to press on forward to push past the police line. There is no such allegation against Mr. Sturgeon – as he was essentially silent the entire time he was on the Capitol grounds. The joinder of these defendants would prejudice Mr. Sturgeon because it would be difficult for the

jury to compartmentalize the evidence against each of them to judge independently. *Franklin*, 2005 WL 8157514 *3 (the critical question is "whether a jury could reasonably compartmentalize the evidence introduced against each defendant.") (quoting *Halliman*, 923 F.2d at 884). Mr. Sturgeon would not receive a fair trial if joined with the other co-defendants because the evidence against them, specifically Johnatakis would have a "spillover" effect causing the jury to implicate Mr. Sturgeon and would "prevent the jury from making a reliable judgment about [his] guilt or innocence." *Id*. at *15 (quoting *Zafiro*, 506 U.S. at 539).

In *Kotteakos*, the Supreme Court applied these principles and recognized the danger of prejudice where joinder has the tendency to falsely amplify the scope of criminal culpability. *Kotteakos*, 328 U.S. at 773. The Court further held that the trial court's caution to the jury "to consider each defendant's case separately" was not enough to mitigate the error, because it permeated the atmosphere throughout the entire trial. *Id*. at 769-70. Finally, the Court rejected the government's argument that joinder efficiencies can override concerns about prejudice:

> True, this may be inconvenient for the prosecution. But our government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our history individual protections, including those surrounding criminal trial.

*Id*. at 773. There is a grave danger here that the jury will associate each defendant with the alleged collective conduct, especially when the allegations against another co-defendant are much stronger than the ones against Mr. Sturgeon. Every defendant is presumed innocent until/if proven guilty and Mr. Sturgeon has a right to a fair trial where the jury will consider the evidence only against him instead of

listening to misleading and logically irrelevant evidence that would only tend to improperly amplify Mr. Sturgeon's charges.

## Conclusion

For these reasons, this Court should not permit Mr. Sturgeon to be joined with his other co-defendants who are completely unrelated to him.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob
D.C. Bar No. 1031486
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500
Maria_Jacob@fd.org