UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **United States of America,**<br><br>v.<br><br>**ISAAC STURGEON,**<br><br>**Defendant.** | Case No. 21-cr-091 (RCL) |

**DEFENDANT'S MOTION TO COMPEL DISCOVERY UNDER RULE 16 AND BRADY V. MARYLAND**

Defendant Isaac Sturgeon, through undersigned counsel, respectfully moves this Court to compel the government to disclose evidence that is potentially exculpatory and otherwise material to the preparation of Mr. Sturgeon's defense. Counsel states the following in support of his Motion.

## Introduction

The Government's case against Mr. Sturgeon centers mostly on the theory that Mr. Sturgeon knowingly trespassed on Capitol Grounds, engaged in disorderly conduct, and that he intentionally obstructed and/or impeded the certification of the vote count on January 6, 2021.

As a result of these accusations, the Defense made the following requests[1]:

---

[1] The defense made most of these requests in a letter dated July 26, 2022 that was sent via email to government counsel. The defense never received a response. When new government counsel noticed their appearance, undersigned counsel sent another similar but revised letter to new government counsel on October 12, 2022, and a slightly revised

1

1. Any and all information pertaining to the investigation of the Secret Service after the Department of Homeland Security learned of the deletion of messages before and after January 6, 2021.[2] More specifically, and in addition, letters or memoranda detailing efforts or lack of efforts to preserve these text messages and reasons for the failure to preserve.

2. Any Secret Service and/or Capitol Police communications, including text messages, emails, radio calls pertaining to the events on January 6, 2021. More specifically, communications pertaining to: (1) the decision to declare parts of the Capitol Grounds and Complex restricted (including identification of any such restricted area and mechanisms used to delineate restricted areas ), (2) any steps taken to communicate restricted areas to the public, (3) the reasons the certification proceedings were delayed, (4) the status of any sign postings, racks, cordons, or other restrictions after the certification proceedings were halted, (5) the status of any open or unlocked doors after the certification proceedings were halted, (6) the identity/actions of any law enforcement personnel who encouraged activity among the crowd at the Capitol or Capitol Grounds on January 6, 2021.

3. Any communications between former President Trump's staff on the day of January 6, 2021, regarding former President Trump's failure to stop the riot as well as affirmative steps he took to further encourage it.[3]

**Legal Standards**

Federal Rule of Criminal Procedure 16(a)(1)(E) provides defendants with broad discovery rights. The rule requires the production, upon defendant's request, of documents and objects within the government's possession, custody, or control that

---

version on October 16, 2022. It is understood that new government counsel was not informed of the previously made request until now. Undersigned counsel has also made a similar requests in other cases dating back to July of 2022 and has yet to receive a response. With the impending trial in this matter, a response to this request is necessary.
[2] Secret Service identified potential missing text messages on phones of 10 individuals - CNNPolitics; Secret Service erased Jan. 6 texts after officials requested them, watchdog says : NPR https://www.cnn.com/2022/07/22/politics/secret-service-investigators-text-messages/index.html
[3] Jan. 6 hearing focuses on Trump's inaction during Capitol riot (nbcnews.com) https://www.nbcnews.com/politics/congress/prime-time-jan-6-hearing-focuses-trumps-inaction-187-minutes-mayhem-rcna36737

are "*material* to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). Materiality "is not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). Evidence is material—whether exculpatory or inculpatory—"as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *Lloyd*, 992 F.2d at 351). A defendant makes an adequate showing of materiality where he "present[s] any facts which would tend to show that the government was in possession of information that would be helpful to the defense." *United States v. Cadet*, 727 F.2d 1453, 1466 (9th Cir. 1984).

In determining what to disclose under Rule 16, "the government cannot take a narrow reading of the term 'material' . . . [n]or may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation." *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005). Rather, "[t]he language and the spirit of the Rule are designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case." *United States v. Libby*, 429 F. Supp. 2d 1, 5 (D.D.C. 2006) (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989); *see also* Fed. R. Crim. P. 16, Advisory Committee Notes (amend. 1974) (explaining how "broad discovery contributes to the fair and efficient administration of criminal justice" and that Rule 16 provides "the *minimum* amount of discovery to

3

which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases" (emphasis added)). Because it is in the interest of fairness that criminal defendants have "the widest possible opportunity to inspect and receive" material in the government's possession that may aid in the defense, disputes regarding the discoverability of information under Rule 16 "should be resolved in the defendants' favor." *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003).

Disclosure obligations are also governed by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. Specifically, in the pretrial setting, *Brady* requires disclosure of any information that is "favorable" to the defense, "without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial."[4] *United*

---

[4] *Brady's* pretrial disclosure requirements are different from their post-conviction disclosure requirements because there is no prejudice requirement in the pretrial setting. *Compare Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) (discussing that, in the post-conviction context, *Brady* requires the information to be favorable, suppressed, and "prejudice must have ensued"), *with United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) ("Because the definition of [prejudice] discussed in *Strickler* and other appellate cases is a standard articulated in the post-conviction context for appellate review, it is not the appropriate one for prosecutors to apply during the pretrial discovery phase."); *United States v. Moore*, 867 F. Supp. 2d 150 (D.D.C. 2012) (same); *United States v. Singhal*, 876 F. Supp. 2d 82, 104 (D.D.C. 2012) (same); *United States v. Naegele*, 468 F. Supp. 2d 150, 153 (D.D.C. 2007) (same); *United States v. Olsen*, 704 F.3d 1172, 1883 n.3 (9th Cir. 2013) ("[S]ome trial courts therefore have concluded that the retrospective definition of materiality is appropriate only in the context of appellate review, and that trial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial."). Indeed, in *Safavian*, Judge Friedman emphatically rejected the government's contention that, in the pretrial setting, *Brady* only required disclosure of items that would have an impact on the outcome of the trial. *Safavian*, 233 F.R.D. at 16. As Judge Friedman recognized, "[t]he problem with this iteration of *Brady* and the government's view of its obligations at this stage of the proceedings, however, is that it permits prosecutors to withhold admittedly favorable evidence whenever the prosecutors, in their wisdom, conclude that it would not make a difference to the outcome of the trial." *Id.*

*States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005).  Favorable information includes any information "that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses." *Id.*

The government's broad disclosure obligations arise out of the "special role played by the American prosecutor in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 280 (1999).  The prosecutor's interest "is not that [she] shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 99 (1935).  And in her pursuit of justice, "'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in th[e] case,'" including the MPD, the FBI, Department of Homeland Security, and to disclose that information to the defendant. *See Strickler*, 527 U.S. at 281 (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)); *In Re Sealed Case*, 185 F.3d 887, 896 (D.C. Cir. 1999).  Because of the prosecutor's special role, courts "look with disfavor on narrow readings by prosecutors of the government's obligations under *Brady*." *United States v. Singhal*, 876 F. Supp. 2d 82, 104 (D.D.C. 2012).  "Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure." *Safavian*, 233 F.R.D. at 17; *See also* U.S. Attorney's Manual § 9-5.001.C.1 (requiring disclosure of "information that is inconsistent with any element of any crime charged . . . regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime.").

As the Supreme Court explained, "a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. This is as it should be." *Kyles v. Whitley*, 514 U.S. 419, 439 (1995).

Lastly, the government is required to identify *Brady* material when the discovery is voluminous. *United States v. Saffarinia*, 424 F. Supp. 3d 46, 58 (D.D.C. 2020) (government ordered to identify *Brady* material, to the extent that government knows of such information). There is no question that the discovery in January 6 cases has been uniquely voluminous requiring the government to contract with Deloitte to create a complicated database in order to share it. Every few weeks, thousands of materials are added to this database. While the government sends a letter summarizing the production, it should also specifically identify any *Brady* material it knows of in these massive and unprecedented productions spanning almost two years.

**Argument**

It is beyond dispute that the Government is in possession of information that is material to the preparation of the defense and potentially exculpatory. The information requested by the Defense relates first to the security measures that were in place on January 6, 2021, to ensure that members of the public knew that the grounds were restricted. The Government agrees that the testimony is critical to its case, because one of the central parts of its case in chief has been having a member of law enforcement testify to the security perimeter in great detail. *See e.g. United States v. Guy Reffitt*, 21-cr-32 (DLF), *United States v. Cuoy Griffin*, 21-cr-92 (TNM),

*United States v. Matthew Martin*, 21-cr-394 (TNM), Trial Transcripts. The Secret Service is currently under investigation after it was discovered that 10 Secret Service Personnel that contained metadata showing text messages were sent and received around January 6, 2021, but were not retained. This investigation as well as information regarding all Secret Service and/or Capitol police communications during January 6, 2021, is relevant to impeachment testimony and the ability of the defense to potentially rebut the government's claim that all areas were clearly restricted at all times. For example, if a defendant claims that at the point they entered the grounds, there were no restrictions, this information could be relevant to impeach an agent who claims that all locations were restricted. If members of the Secret Service or Capitol police were messaging each other about these restrictions, the defense is entitled to inspect these messages.

Furthermore, information about the status of the restrictions as the afternoon progressed is relevant to when exactly some of those signs may have not been visible to certain individuals depending on when they arrived. For example, after the initial breach occurred, it would be relevant to know whether or not there were personnel who reinstated or re-enforced those restrictions at any point in time. Lastly, information regarding former President Trump's inactions/actions before, during, and after January 6, 2021, are directly relevant to a potential affirmative defense, namely that Mr. Sturgeon may have relied on a public authority that day when entering the allegedly restricted area.

7

This evidence is also potentially exculpatory. This information includes not potential impeachment evidence but also evidence that could exonerate Mr. Sturgeon. *United States v. Wilson*, 605 F.3d 985, 1006 (D.C. Cir. 2010). The D.C. Circuit has held: "The defense was entitled to information that would strengthen its impeachment of [the witness]… Given its relevance as impeachment evidence, the government had a duty under *Brady* to make a timely pretrial disclosure to the defense." *Id.*

In fact, the Local Criminal Rules of this district *require* timely disclosure of such materials. Local Criminal Rule 5.1 provides that "[b]eginning at the defendant's arraignment and continuing throughout the criminal proceeding, the government shall make good-faith efforts to disclose" all information "favorable to an accused" that is "material" under *Brady* "**as soon as reasonably possible after its existence is known**, so as to enable the defense to make effective use of the disclosed information in the preparation of its case." LCrR 5.1(a) (emphasis added). *See also* Order, *United States v. Brynee Baylor*, No. 16-cr-180 (ESH) (D.D.C. Nov. 8, 2016), ECF No. 10 (*sua sponte* ordering the government to produce, "in a timely manner, including during plea negotiations" all *Brady* material notwithstanding the fact that "such evidence also constitutes evidence that must be produced later pursuant to the Jencks Act, 18 U.S.C. § 3500, or by the fact that such evidence need not be produced according to Rule 16.").

Finally, the Secret Service and the Capitol police are government officials who have participated in the investigation and prosecution of the offenses charged and so

the government has an obligation to seek from these sources all information subject to disclosure under the Rules. LCr.R 5.1(e).

## Conclusion

For the reasons set forth above, and for such other reasons as this Court may determine, Mr. Sturgeon respectfully requests that this motion be granted and that the Court order the government to produce the information requested.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500