IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CRAIG MICHAEL BINGERT, ISAAC STEVE STURGEON, and TAYLOR JAMES JOHNATAKIS,<br><br>Defendants. | Case No.: 1:21-cr-00091-RCL |

GOVERNMENT'S RESPONSE IN
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to defendant Sturgeon's Motion to Compel (Dkt. Entry 83), which was joined by defendant Bingert (Dkt. Entry 86). Specifically, defendants move to compel production of three categories of documents, including: (1) information pertaining to text messages sent by members of the U.S. Secret Service before and after January 6, 2021; (2) U.S. Secret Service and U.S. Capitol Police communications pertaining to restricted areas in and around the U.S. Capitol Building on January 6, 2021; and (3) communications between former President Trump's staff regarding President Trump's efforts to stop the riot. As set out below, the government agrees to review materials in its possession for items responsive to certain of defendants' requests. However, defendants' motion to compel communications between former President Trump's staff should be denied for the same reasons defendants should be barred from asserting a public authority defense. Additionally, certain of defendants' requests should be barred as irrelevant and/or as seeking items not within the possession of the prosecution team, as discussed below.

1

**BACKGROUND**

The breadth of the government's productions of materials in this case (and all cases arising from the January 6 attack on the Capitol) has been unprecedented. They have far exceeded what is required by rule and caselaw. And they will continue to be.

The government has provided voluminous discovery in this case and has attempted to be as helpful as possible in working with the defense to help them understand and utilize these materials. Since October 2021, all Capitol Siege defense counsel have been able to request a license from the Federal Public Defender for the District of Columbia ("FPD") to access the defense evidence.com video repository. Authorized users of this database can both download and share video files. For context, the files provided amount to over nine terabytes of information. The government has produced over 30,000 files consisting of body-worn and hand-held camera footage from entities including five law enforcement agencies and surveillance-camera footage from three law enforcement agencies to an evidence.com video repository that is managed and administered by FPD and the Defender Service's National Litigation Support Team. The government provided detailed logs describing the custodian, location, and time periods for each video file in evidence.com. In addition, the government has provided hundreds of hours of work product consisting of analytical and mapping information for the sole purpose of assisting defense counsel in identifying video files they may deem relevant.

Since January 2022, all Capitol Siege defense counsel have been able to request a license from FPD to view materials in FPD's Relativity workspace. As of November 18, 2022, over 3.86 million files (over 6.95 terabytes of information) have been provided to the defense Relativity workspace. The materials in these files include (but are not limited to):

- U.S. House of Representatives and U.S. Senate Recording Studio footage;

- Reports (including video and audio exhibits) arising from investigations into allegations of officer misconduct on or about January 6, 2021;

- Information pertaining to James "Ray" Epps (Epps has been the subject of widely-publicized claims that "paint him as a secret federal asset in charge of a 'breach team' responsible for setting off the riot at the Capitol." *See* Alan Feuer, A Trump Backer's Downfall as the Target of a Jan. 6 Conspiracy Theory, N.Y. TIMES, July 13, 2022.);

- Video recorded by the D.C. Metropolitan Police Department's Electronic Surveillance Unit;

- The results of searches of 721 digital devices and 398 Stored Communications Act ("SCA") accounts;

- 331 digitally recorded interviews of investigation subjects;

- Radio communications from multiple law enforcement agencies including USCP (including a redacted Transcript of Radio Communications from the Dignitary Protection Detail Channel), Metropolitan Police Department, Virginia State Police, and the U.S. Park Police);

- 2,590 FBI FD-302s and related attachments (FD-302s generally consist of memoranda of interviews and other investigative steps);

- 111,061 (redacted or anonymous) tips;

- Search warrant documents related to the government's collection of comprehensive data from the Capitol's cell tower infrastructure and the collection of geolocation information for the Capitol and restricted perimeter;

- Medical information for officers injured during the siege;

- Case-specific information obtained in connection with the investigation of numerous subjects (charged and uncharged);

- Files provided to the government by multiple law enforcement agencies in response to requests for any potentially discoverable information, including information about individuals who have not been charged;

- Documents the government will use to prove interstate commerce was affected; and

- Documents related to the whereabouts of Vice President Pence on January 6, 2021.

All Relativity productions have been accompanied by cover letters describing the contents of the production and indexes that provide further detail. Defense counsel may conduct limitless searches in the FPD Relativity database. To assist in this regard, the government has provided subjective work product fields to the defense Relativity database solely to assist defense counsel in locating materials that may be relevant to specific individuals. Defense counsel can generate detailed indexes of the contents of the entire database or of target portion, *e.g.*, all documents code to the defendant's name.

## ARGUMENT

As set forth above, the government has made more than fulsome disclosures in this case. To the extent the defendant requests materials to which he is entitled, we have already produced the responsive materials. Nevertheless, we will review our holdings with respect to defendant's specific requests, as set forth below. We note, however, that the United States Secret Service ("USSS") is not part of the prosecution team, so our review will be limited to materials that we have acquired from USSS as part of the overall investigation.

### A. The United States Secret Service is not Part of the Prosecution Team.

The government is responsible for the disclosure of materials in the possession or control of the prosecution team: "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *see also Mclaughlin v. Corsini*, 577 F.3d 15, 20 (1st Cir. 2009) (the duty to disclose "does not extend to information possessed by government agents not working

4

with the prosecution"); *United States v. Walker*, 746 F.3d 300, 306 (7th Cir. 2014) (same).[1] As explained by the Sixth Circuit: "'Brady clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess.'" *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007).

This is true even where the entity holding the materials is part of the Executive Branch. *See, e.g., United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006) (USSS not part of prosecution team); *United States v. Risha*, 445 F.3d 298, 304 (3d Cir. 2006) (Welfare Benefits Administration not part of prosecution team); *United States v. Taylor*, 942 F.3d 205 (4th Cir. Nov. 5, 2019) (ATF not part of prosecution team); *United States v. Rigas*, 583 F.3d 108 (2d Cir. 2009) (SEC not part of prosecution team); *United States v. Merlino*, 349 F.3d 144, 154 (3d Cir. 2003) (BOP not part of prosecution team); *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (IRS not part of prosecution team).

This case – like all Capitol breach cases – has been investigated by the FBI and the United States Capitol Police. The United States Secret Service has not participated in the investigation of this matter; thus, they are not part of the prosecution team. We have, however, obtained certain materials from the USSS in connection with our investigation of the January 6 attack, and we will search those holdings for any materials that are responsive to the defendant's requests.[2]

B.     **The Defendant's Specific Requests.**

"Under our law, the adversary system is 'the primary means by which truth is uncovered.' [citation omitted]. We decline to extend the defendant's right to discovery beyond that required

---

[1] Similarly, Rule 16 provides for the production of materials "if the item is within the government's possession, custody, or control . . . ." Fed. R. Crim. P. 16 (a)(1)(E).
[2] To the extent we call as witnesses any USSS agents, we will of course provide any impeaching material or statements required under 18 U.S.C. § 3500 *et seq.*, as appropriate.

by statute or the constitution." *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988); *see also United States v. Presser*, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988) ("[T]he Brady rule, Rule 16 and the Jencks Act, exhaust the universe of discovery to which the defendant is entitled."); *United States v. Bagley*, 473 U.S. 667, 676 (1985) ("the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial"); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one; . . . the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded."); *United States v. Agurs*, 427 U.S. 97, 106 (1976) (the government is under "no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor).

Nevertheless, in this matter – and all cases related to the January 6, 2021 attack on the Capitol – the government has taken a broad view of discovery and produced materials far in excess of those actually required. And we will continue to do so here, as set forth in more detail below.

The defendant has asked for the following categories of materials involving USSS and/or Capitol Police communications:

*1. investigation of USSS's Retention of Communications.*

First, as set forth above, the USSS is not part of the prosecution team. Accordingly, whether they destroyed communications is of no moment to this matter. But we will review USSS materials that are in our possession for any discoverable materials.

Second, the defendant's request for "all information pertaining to the investigation of the Secret Service" regarding possible deletion of communications related to the January 6, 2021 attack is misplaced. It raises a potential question of spoilation. While the determination of whether

the government has suppressed exculpatory evidence pursuant to *Brady* does not turn on the intent of the government, the Supreme Court has established a different standard, when determining the ramifications – if any – for the failure to preserve materials potentially favorable to the defense. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988).

> Part of the reason for the difference in treatment is found in the observation made by the Court in *Trombetta, supra*, 467 U.S., at 486, that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause, *see Lisenba v. California*, 314 U.S. 219, 236 (1941), as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., *those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.* We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Id.* (emphasis added).

When, as here, the exculpatory nature of the material at issue is speculative at best, the defendant must establish that the government destroyed the material in bad faith. See, e.g., *United States v. Vega*, 826 F.3d 514, 533 (D.C. Cir. 2016) (when "no more can be said'" about the evidence "'than that it could have been subjected to tests, the results of which might have exonerated the defendant,'" there is no denial of due process unless a criminal defendant can demonstrate the Government's bad faith."); *see also United States v. Kimoto*, 588 F.3d 464 (7th Cir. 2009) (failure to preserve emails not a due process violation unless, among other things, exculpatory nature of the emails was apparent before they were destroyed); *United States v. Dunn*, 2011 WL 11533293 *2 (6th Cir. 2013) (rejecting claim that government violated due process by destroying computer seized in search when defendant's claims of exculpatory value were vague);

*United States v. Lindsay*, 482 F.3d 1285 (11th Cir. 2007) (defendant's claim that destruction of fingerprint card created loss of exculpatory information was both speculative and lacked proof that destruction was done in bad faith). Here, even assuming that any USSS communications were destroyed, the defendant cannot establish that at the time of the destruction the exculpatory nature of the materials with respect to the defendant was known to the USSS. "[T]he police themselves by their conduct [did not] indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58. Accordingly, the defendant's demand for information related to possible destruction of communications by the USSS should be denied.[3]

> 2. *the decision to declare parts of the Capitol Grounds and Complex restricted (including identification of any such restricted area and mechanisms used to delineate restricted areas)*

This request calls for irrelevant information. Section 1752 does not require the government to prove that the defendant knew why a "restricted building or grounds" was restricted. The "knowingly" adverb in Section 1752(a) modifies the actus reus in each Count—entering or remaining without lawful authority in Count Two (§ 1752(a)(1)), engaging in disorderly or disruptive conduct in Count Three (§ 1752(a)(2))—but does not attach to 18 U.S.C. § 1752(c), which defines the term "restricted building or grounds" in one of three possible ways. How to define a restricted area for purposes of 18 U.S.C. § 1752 has "nothing to do with the wrongfulness of the defendant's conduct," and thus is "not subject to the presumption in favor of scienter." *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019); *see United States v. Bursey*, 416 F.3d 301,

---

[3] Since the defendant should not be permitted to present a public authority defense (*see* Dkt. Entry 93) their request for request for communications of the former president (*see* Dkt Entry 83) should be denied.

309 (4th Cir. 2005). It therefore follows that Section 1752 does not require the government to prove why the area was restricted.

    3.     *any steps taken to communicate restricted areas to the public*

All that is relevant here is whether the defendants were put on notice that they, themselves, were entering a restricted area – not what others may or may not have known. Nevertheless, we have already made materials regarding such notifications across the Capitol grounds and throughout the time of the attack available to the defendant, as set forth above.

    4.     *the reasons the certification proceedings were delayed*

We have previously produced to the defendant any materials as required by Rule 16(a)(1)(E) regarding this request.

    5.     *the status of any sign postings, racks, cordons, or other restrictions after the certification proceedings were halted,*

*See* response to # 3, *supra*.

    6.     *the status of any open or unlocked doors after the certification proceedings were halted,*

It bears noting that the status of the doors is not relevant. In other words, whether additional measures could have been taken to prevent a crime is not a defense. In any event, to the extent that we have such information that has not previously been provided, it will be.

    7.     *the identity/actions of any law enforcement personnel who encouraged activity among the crowd at the Capitol or Capitol Grounds on January 6, 2021.*

The government does not have any information that any law enforcement personnel "encouraged activity among the crowd." We note, as stated above, that we have already produced all surveillance video depicting law enforcement's interaction with the mob on January 6, 2021. Additionally, we have produced materials related to any allegations of misconduct by law enforcement personnel that day.

## CONCLUSION

Since the government has far exceeded its disclosure obligations in this matter and will review its holdings regarding the specific defense requests, as set forth above, the defendant's motion to compel discovery should be denied.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:   */s/ Kaitlin Klamann*
        KAITLIN KLAMANN
        Assistant United States Attorney
        601 D Street NW
        Washington, D.C. 20530
        IL Bar No. 6316768
        (202) 252-6778
        Kaitlin.klamann@usdoj.gov