UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America,<br><br>v.<br><br>ISAAC STURGEON,<br><br>Defendant. | Case No. 21-cr-091 (RCL) |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL DISCOVERY UNDER RULE 16 AND BRADY V. MARYLAND**

Defendant Isaac Sturgeon, through undersigned counsel, respectfully submits this reply to the government's response opposing many of the defendant's requests for exculpatory evidence that is material to the preparation of Mr. Sturgeon's defense.

## Introduction

The Government's preliminary remarks in its response outline the unprecedented nature of its most extensive prosecution of more than 800 criminal defendants in the January 6 cases. *See* Gov. Res. at 1-2. These remarks outline the government's efforts thus far to work with the Federal Public Defender's Office and its National Litigation Support Team in order to create a system in which to share discovery. Mr. Sturgeon agrees that the government has expended many resources to ensure that defendants have access to a platform capable of carrying "3.86 million files and over 6.95 terabytes of information." *See id*. In order to make this platform

1

accessible to counsel, the Relativity Database was created, which has required extensive training for counsel to navigate.

However, the efforts that the government has undergone to make millions of files available to the defense do not excuse its obligations to *meaningfully* disclose potentially exculpatory and material information at the defendant's request. It is the government that made the choice to prosecute more than 800 individuals, thereby resulting in overall common case discovery in the amount of 6.95 terabytes of data. It is simply not reasonable to suggest that because the government has provided unprecedented amounts of discovery that mostly has nothing to do with Mr. Sturgeon's case, that it can wash its hands (1) of any further obligation to provide specific case discovery that is relevant to Mr. Sturgeon himself, and (2) an obligation to provide *meaningful* access to discovery rather than unreasonably expecting the defense to comb through millions of files to find exculpatory evidence.

### I. The United States Secret Service is Most Definitely Part of the Prosecution Team

The government is incorrect when it asserts that the law enforcement entity actually present at the Capitol Building on January 6, 2021, and/or in the immediate vicinity, is not part of the prosecution team – relieving them of a duty to learn of favorable evidence the United States Secret Service (USSS) might have in its possession. *See* Gov. Res. at 4. In fact, in its own timeline of events, the government specifies that the USSS is one of the agencies that were involved in the "multi-agency teleconference" that planned for the January 6, 2021 event. *See* Exhibit 1, Gov. Timeline of events filed under seal. Furthermore, on the day of January 6, 2021, the

2

Capitol Police requested assistance from the Chief of the USSS. *See id.* at 12. Other agencies involved included MPD, US Park Police, and the FBI. *See id.* So to be clear, Mr. Sturgeon is not requesting information from the IRS or BOP, it is requesting information from a law enforcement entity directly involved in the events on January 6, 2021.

The Supreme Court has mandated that an individual prosecutor has a "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, *including the police.*" *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). (emphasis added). The government cannot pick and choose which type of police are part of its prosecution team, especially when the USSS was directly involved and is clearly a law enforcement entity.

The government in its response provides a second circuit decision where the court found that a member of the USSS was not considered to be a part of the prosecution team. *See* Gov. Res. at 5 (citing *United States v. Stewart*, 433 F.3d 273,298 (2d Cir. 2006). However, this case is not relevant to the question here as the government in *Stewart* called a civilian employee of the USSS to give an expert opinion as he was the only "national expert for ink." *Stewart*, 433 F.3d at 295. When the defense argued that this expert's false testimony should be imputed to the prosecutors themselves for purposes of *Brady*, the Court rejected that argument explaining that the witness was not an "arm of the prosecution" because that individual did not work in conjunction with police. *Id.* at 298. That is just simply not the scenario here as the defense is not requesting information about an expert

3

witness. Here, the USSS was directly involved in its capacity as law enforcement and was present at the actual crime scene itself. *See id.* ("the relevant inquiry is what the person *did*, not who the person *is*.")

Furthermore, judges in this district court have already rejected this same type of argument from the government. For example, the court in *U.S. v. Andre Williams*, 18-cr-090 (PLF) ruled that the Bureau of Prisons halfway house was an arm of the government when the defense filed a motion to dismiss after that halfway house destroyed evidence that could have been favorable in defending Mr. Williams's Escape charge. *See* Memorandum and Order, ECF No. 30, 34. *See also United States v. Safavian*, 233 F.R.D. 12, 14 (D.D.C. 2005) (the "government" includes any and all agencies and departments of the Executive Branch of the government and their subdivisions).

Lastly, the government is incorrect when it asserts that to be an "arm of the prosecution," the entity must have "participated in the investigation" in the particular case. *See* Gov. Res. at 5. To give a clear example - when a local police officer arrests a suspect but then the case is turned over to the FBI for investigation, the government is not then absolved of obtaining information stemming from the local arrest simply because that local police department did not investigate the ultimate case. The same is true here where the USSS was actually at the scene of the crime, were often times witnesses who gave statements to the FBI, and had involvement in what ultimately was determined to be illegal activity by the federal government. The government is obliged to disclose favorable material to Mr. Sturgeon that the USSS

4

has in its possession relating to their involvement in January 6, 2021. Also to be clear, Mr. Sturgeon also asks for information in the possession of the Department of Homeland Security regarding the open investigation as the USSS deleted messages. *See* Def. Mot. at 2.

## II. Mr. Sturgeon's Requests are Relevant and Material to His Defense

The government in its response breaks down each defense request to argue that the information requested is not relevant. *See* Gov. Res. at 5-9. In doing so, it potentially misunderstands Mr. Sturgeon's requests and is incorrect as to its relevancy for Mr. Sturgeon's defense:

- *The decision to declare parts of the Capitol Grounds and Complex restricted (including identification of any such restricted area and mechanisms used to delineate restricted areas)*

The government misunderstands the reason for this defense request when it asserts it is not required to prove that the defendant "knew why" the building or grounds were restricted. *Id.* at 8. Mr. Sturgeon is not seeking to obtain this information for the purpose of learning *why* the decision was made. Rather, he seeks this information to learn whether or not the procedures surrounding the execution of the restrictions were visible and clear to him. If he did not know the area he was in specifically was restricted, he is not guilty of several charged offenses. Section 18 U.S.C. §1752(a) is not a strict liability offense and requires knowledge that the area is in fact restricted. *See United States v. Bursey*, 416 F.3d 301, 307 (4th Cir. 2005) (holding the court did not need to determine whether the statute requires a physical

demarcation of a restricted area because the boundaries of restricted area were *visibly marked* by officers at the perimeter). (emphasis added).

This defense discovery request simply put asks "When Mr. Sturgeon arrived to the Capitol grounds, what markings were present at that time so that he would be aware the area was restricted?" *See United States v. Matthew Martin*, 21-cr-394, Transcript from Bench Trial, ECF No. 41 (court acquitting defendant of 18 U.S.C. §1752(a) finding that "while the government has shown that the defendant had entered a restricted area at this point, it is has not shown he knowingly did so.")

- *Any steps taken to communicate restricted areas to the public…the status of any sign postings, racks, cordons, or other restrictions after the certification proceedings were halted.*

The government asserts that it has already provided materials responsive to this request. *See* Gov. Res. at 9. To undersigned counsel's knowledge, the government has provided general information in its common case discovery which details the perimeter put into place that was designated restricted with mostly bike barricades. However, it has not provided specific case discovery regarding what communications/markings were given or were present to put Mr. Sturgeon on notice that the areas he entered were restricted at the time he entered the grounds. Furthermore, the second part of the request asks more specifically for any changes to any potential restriction over time. This is relevant because an area that was clearly delineated as restricted may not be so clear after individuals either removed those barriers or they were removed by law enforcement.

The government's response to this request further emphasizes the need for the government to provide specific case discovery rather than simply pointing the defense to Evidence.com or Relativity. The terabytes of discovery make it nearly impossible for the defense to find items specifically relating to Mr. Sturgeon. It is just not reasonable to place this burden on the defense, especially when the government is clearly aware of the existence and location of this information within the vast database.

- *Investigation of USSS's retention of communications*

The government asserts in its response that (1) it will look into this request, but that (2) the request raises the question of spoliation and that the defense has not established bad faith. *See* Gov. Res. at 6-8. As an initial matter, the defense does not know whether or not the government (USSS) acted in bad faith because the government has not turned over materials regarding this open investigation. That is one of the reasons for this request, to determine whether or not Mr. Sturgeon's due process rights were violated by acts of bad faith that led to the failure to preserve *potentially useful* evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988) (the government's failure to preserve potentially useful evidence "constitutes denial of due process of law when government acts in bad faith).

Most importantly and *regardless of bad faith*, the government does have a duty to preserve *materially exculpatory* evidence. *Id*. at 57. ("Due process clause of Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant materially

7

exculpatory evidence.") Evidence is "materially exculpatory" if there is any "reasonable probability" that, considering the evidence "collectively, not item by item, "the results of trial or sentencing would be different. *Kyles v. Whitley*, 514 U.S. 419, 433-36 (1995); *see also Bell v. Cone*, 556 U.S. 449, 470 (2009) ("In other words, favorable evidence is subject to constitutionally mandated disclosure when it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (quotation marks and citation omitted)).

The government claims that the exculpatory nature of the material at issue is "speculative at best." *See* Gov. Res. at 8. It is unclear how the government knows that these missing messages do not contain exculpatory value. Its insistence that it is not required to turn over information regarding this investigation or other messages from the USSS that were not destroyed puts us all in a "catch-22" scenario. Even still, there is a "reasonable probability" that these messages do contain some exculpatory value, especially in light of some of the exculpatory information that was revealed by the January 6 House Committee – that the USSS prevented former President Trump from joining his constituents at the Capitol building despite his many efforts to do so. This one revelation begs the question of what else is missing that could potentially exculpate Mr. Sturgeon.

Lastly, it appears as though the government is only referring to exculpatory information that would tend to negate Mr. Sturgeon's guilt. However, it is well established that exculpatory material also includes evidence that is either material to his guilt or relevant to the punishment to be imposed. *California v. Trombetta*, 467

8

U.S. 479, 485 (1984). This district recognizes that *Brady* information includes, but is not limited to, "information that tends to mitigate the charged offense(s) or reduce the potential penalty," and information probative of "an articulated legally cognizable defense theory or recognized affirmative defense" to the offense charged. LCrR 5.1(b)(1)-(3). *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material *either to guilt or to punishment*"). (emphasis added).

Keeping that well established principle in mind, there is a reasonable probability that the USSS messages close and during to the time and place of the allegations do possess some exculpatory value – whether it is exculpatory to Mr. Sturgeon's guilt or potential punishment. Therefore, Mr. Sturgeon does not need to show bad faith on the part of the government and is entitled to this information because there is a reasonable probability that the results of the trial and/or sentencing would be different if he had access to this information – whether it is because certain information negates his guilt or allows him to mitigate his culpability.

### III. The Defense Request Number Three Should Be Disclosed

The government in its response simply asserts in a footnote that because the defendant should not be permitted to raise a public authority defense, his request for "communications of the former president" should be denied. *See* Gov. Res. at 8, fn 3.

Firstly, Mr. Sturgeon's full request is "*any communications between President Trump's former staff on the day of January 6, 2021, regarding former President*

*Trump's failure to stop the riot as well as affirmative steps he took to further encourage it.*" *See* Def. Mot. at 2. Secondly, the Court has not yet ruled on whether or not Mr. Sturgeon can present this defense and the government cannot base its discovery obligations on undetermined rulings. Even if evidence is later ruled to be inadmissible, the defense is still entitled to potentially favorable evidence that could lead directly to material admissible evidence. *See U.S. v. Johnson*, 592 F.3d. 164, 171 (D.C. Cir. 2010) (citing to *Ellsworth v. Warden*, 333 F.3d 1, 5 (1st Cir. 2003)).[1] Not only could disclosure of this evidence further support Mr. Sturgeon's argument that he is entitled to present the public authority defense, it also would strengthen the defense itself if permitted to present the evidence at trial.

Moreover, even if the Court ultimately finds that Mr. Sturgeon is not permitted to present the defense, this evidence is certainly relevant and admissible to negate Mr. Sturgeon's intent. *See Cheek v. U.S.,* 498 U.S. 192 (1991) ("forbidding a jury to consider evidence that might negate willfillness would raise a serious question under the Sixth Amendment"). *See also United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995) (Eleventh Circuit has acknowledged that criminal intent may be negated by defendant's honest but mistaken belief that government authorized conduct); *United States v. Juan*, 776 F.2d 256 (11th Cir. 1985) (same).

---

[1] A clear example of this is when *Giglio* evidence disclosed later leads to admissible evidence to impeach a witness. The simple disclosure of *Giglio* evidence does not mean it will automatically be admissible, nonetheless is undisputed that *Giglio* disclosures are mandated.

Lastly, this request has become increasingly relevant in the wake of the January 6 House Committee's official findings, including evidence of former President Trump's wrongdoing on January 6, 2021. After an 18 month investigation, the committee released its recommendations on December 19, 2022 – where it referred the former President Trump for serious criminal charges. All of the requested information may very well be disclosed later as part of a related case in the prosecution of Donald Trump. Regardless, it is directly relevant to Mr. Sturgeon's intent and reliance on apparent public authority. Specific Findings/recommendations of January 6 Committee include:

(1) Former President Trump purposefully disseminated false information declaring victory of the election and claiming publically the election had been stolen from him. In doing so, former President Trump told his constituents that former Vice President Mike Pence could lawfully refuse to count electoral counts.

(2) President Trump called on his supporters to come to DC for a rally to confront Congress to change their mind about certifying the election.

(3) As the riot ensued, former President Trump did not issue a public statement telling his supporters to go home until 4:17 p.m., 187 minutes later. When he told people to go home, evidence showed that many of his supporters dispersed from the Capitol.

(4) The committee then referred Donald Trump for criminal charges to the Department of Justice, including Obstruction of an Official Proceeding, Conspiracy to Defraud the United States, Conspiracy to Make a False Statement, and Inciting an Insurrection.[2]

---

[2] *See* Jan. 6 committee condemns Trump as "central cause" of insurrection in sweeping report, ABC News, December 19, 2022 available at https://www.msn.com/en-us/news/politics/jan-6-committee-condemns-trump-as-central-cause-of-insurrection-in-sweeping-report/ar-AA15ssDw

## **Conclusion**

For the reasons set forth above, and for such other reasons as this Court may determine, Mr. Sturgeon respectfully requests that this motion be granted and that the Court order the government to produce the information requested.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500