**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-91 (RCL)** |
| | : | |
| **CRAIG MICHAEL BINGERT and** | : | |
| **ISAAC STEVE STURGEON,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S MOTION *IN LIMINE* TO REQUIRE A PROFFER AS TO
RELEVANCE OF CAPITOL POLICE OFFICER TESTIMONY AND TO BAR
EVIDENCE RELATING TO A PUBLIC AUTHORITY DEFENSE**

The government respectfully requests that the Court require the defendants to proffer the relevance of the testimony of five United States Capitol Police ("USCP") officers whom they have subpoenaed to testify at trial. If, as the government suspects, the testimony relates to defendants' public authority defense, the government respectfully requests that the Court preclude the witnesses' testimony for the reasons set out in its Response in Opposition to their notices of public authority defense (Dkt. Entry 96) and for the additional reasons set out below.

**I.      The Defense Should Proffer the Relevance of the Five Subpoenaed USCP
Officers' Testimony Prior to Trial.**

Defendant Bingert has served trial subpoenas on five USCP officers, demanding their testimony at the trial in this case. Upon information and belief, none of these five officers had any direct interaction with either defendant in this case. Thus, this evidence is not relevant to any issue in this case. *See* Fed. R. Evid. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."). Not only is this evidence irrelevant, but any marginal probative value it might carry is substantially outweighed by the danger of unfair prejudice, confusing the issues,

1

undue delay, wasting time, and needlessly presenting cumulative evidence. Calling *five* USCP officers to testify will prolong the trial in this case considerably. The government already intends to call a USCP officer to discuss the U.S. Capitol building and grounds, as well as the restricted perimeter, so any additional testimony from non-fact witness USCP officers on a relevant topic is likely to be cumulative. Additionally, forcing officers to testify on an irrelevant matter will also disrupt the important work of law enforcement for no apparent reason.

Therefore, the government requests that the defense be required to proffer the subject of the proposed testimony of the five subpoenaed USCP officer witnesses prior to trial.

## II.     The Testimony of the Five Subpoenaed USCP Witnesses Should be Barred if They are Being Called to Testify Regarding Lawful Permits or a Public Authority Defense.

While it is difficult to guess the relevance of the proposed testimony of the subpoenaed USCP officers, it appears defendants may be calling them to testify regarding defendants' potential public authority defense.

For example, one of the officers that defendant Bingert has subpoenaed is USCP Lieutenant Scott Grossi. Lieutenant Grossi's name appears on various documents appended to defendant Bingert's Reply in Support of his Notice of Public Authority Defense, including paperwork relating to permits to demonstrate on January 6, 2021. *See* Dkt. Entry 112. Lieutenant Grossi recently testified in a different January 6 case, *United States v. Egtvedt*, 21-cr-177 (CRC), after being subpoenaed by the defense. In *Egtvedt,* Lieutenant Grossi testified that he was the individual who reviewed demonstration permits requested for Capitol grounds on January 6, 2021. *See* 12/06/2022 Tr., at 467-480. Lieutenant Grossi explained that he reviewed and approved First Amendment demonstrations as part of his employment, including any demonstrations intended to take place on January 6, 2021. *Id.* at 468. If approved, he would "send it up the chain" to the Chief

of Police, who on January 6, 2021, was Steven Sund. Chief Sund would then approve or deny the permit. Importantly, Lieutenant Grossi testified that no organizations were permitted to demonstrate within the restricted perimeter, or specifically, on the Capitol steps. *Id.* at 473. In other words, no groups were given demonstration permits for First Amendment assemblies within the restricted perimeter.

As an initial matter, evidence of possible permits issued to third parties in advance of January 6, 2021, allowing for certain demonstrations to occur at certain lawfully-designated places outside the Capitol building—to the extent any such evidence exists—is simply irrelevant to any fact at issue in this case.  Neither defendant has proffered any evidence that he obtained a permit to demonstrate on January 6, 2021. In fact, defendants have not proffered any evidence to suggest that either of them even knew about any permits issued for January 6, 2021, prior to their entry onto restricted grounds that day. Instead, in his Reply in Support of his notice of a public authority defense, defendant Bingert summarily states, "Many parts of the District of Columbia (and, in particular near and around the U.S. Capitol) had been lawfully permitted for First Amendment Assembly on January 6. [citation omitted]. Mr. Bingert believed that Capitol grounds were similarly permitted and unrestrained." Dkt. Entry 112 at 2. However, defendant Bingert has not pointed to a specific permit that was issued that day that allowed him to be on U.S. Capitol grounds, nor does he point to any evidence demonstrating he believed he was permitted on the grounds on January 6, 2021. Thus, not only does the evidence show there were not, in fact, permits issued that allowed protesters inside the restricted perimeter on January 6, but there is no evidence that the defendants believed there were such permits.

But even if defendants could show that they believed there was a permit that allowed them to be on U.S. Capitol grounds, the defendants could not reasonably rely on any such belief given

what they encountered at the U.S. Capitol. *See* Government's Response in Opposition to Defendants' Notice of Public Authority Defense, Dkt. Entry 96. For example, defendant Bingert claims that "all barricades had been removed by the time he arrived" and that he "approached the group of police officers 'to make further inquiries.'" Dkt. Entry 112 at 15. The evidence clearly contradicts Bingert's statements about the barricades and his intent in "approaching" the West Front. For example, below is a still image from body-worn camera footage depicting defendant Bingert standing on the West Front of the U.S. Capitol filming police officers (one of whom is clutching an extended ASP baton in his hand) who are attempting to keep the crowd back. Defendant Bingert is circled in yellow.



Interestingly, defendant Bingert also admits that he was pepper-sprayed on the West front, a seemingly obvious sign that he was not supposed to be there. *Id.*

Defendant Sturgeon, too, encountered numerous indications that the U.S. Capitol grounds were restricted when he reached the West Front. In fact, Sturgeon took video on his cell phone as

he approached the U.S. Capitol building which depicts clear indications that his and other rioters' presence there was unlawful. For example, below are still images of videos Sturgeon took as he approached the U.S. Capitol showing barricades, "AREA CLOSED" signs, and rioters climbing up the scaffolding.

  

Defendant Bingert also claims he was "not in a group of people who toppled barriers" (*id.*) but not only did Bingert topple barricades, he – along with defendant Sturgeon – used a barricade to assault officers. Below is a still image from body-worn camera footage depicting defendants Bingert and Sturgeon grasping one of the police barricades located at the top of the southwest stairs and pushing it against police defending the U.S. Capitol building. Defendant Sturgeon is circled in green, defendant Bingert is circled in yellow, and the back of the "AREA CLOSED" sign on the barricade is circled in red.



After the assault on the southwest stairs, both defendants stood over the Lower West Terrace ("LWT") and watched rioting and assaults of police officers. In fact, defendant Sturgeon took several videos of assaults occurring in and outside the area on the LWT known as "the tunnel" where rioters ruthlessly and violently fought police for over two hours. Both defendants also had to be forcibly evacuated off of the grounds by police. Sturgeon refused to move off of a ledge and had to be pulled down and pushed out of the area. Bingert also had to be herded by police officers clearing the Inaugural Stage and didn't leave the U.S. Capitol until well after dark.

Given the evidence in this case, there can be no argument that the defendants relied on public authority – whether that be statements by then-President Trump or permits issued by the U.S. Capitol Police – when they entered U.S. Capitol grounds, assaulted officers, participated in a civil disorder, and disrupted the certification proceeding. Therefore, any testimony relating to permitted demonstrations or a public authority defense should be barred.

Dated:  May 1, 2023                                        Respectfully submitted,

                                                           MATTHEW M. GRAVES
                                                           United States Attorney
                                                           D.C. Bar No. 481052

                                        By:     /s/ Kaitlin Klamann
                                                KAITLIN KLAMANN
                                                Assistant United States Attorney
                                                601 D Street NW
                                                Washington, D.C. 20530
                                                IL Bar No. 6316768
                                                (202) 252-6778
                                                Kaitlin.klamann@usdoj.gov

                                        By:     /s/ Courtney A. Howard
                                                COURTNEY A. HOWARD
                                                Trial Attorney, Criminal Division
                                                Detailed to the U.S. Attorney's Office
                                                601 D Street NW
                                                Washington, D.C. 20001
                                                NY Bar No. 4513909
                                                202-514-3130
                                                Courtney.Howard2@usdoj.gov