**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CRAIG MICHAEL BINGERT** and<br>**ISAAC STEVE STURGEON,**<br><br>*Defendants.* | Case Nos. 1:21-cr-91-1-RCL,<br>1:21-cr-91-2-RCL |

## MEMORANDUM OPINION

Defendants Craig Michael Bingert and Isaac Steve Sturgeon will soon stand trial on multiple felony and misdemeanor counts arising from their alleged involvement in the January 6, 2021 Capitol riots. Both defendants have filed several pretrial motions.

While the Court will leave resolution of most of those motions for the pretrial conference, resolution of Mr. Sturgeon's Motion to Compel Discovery, ECF No. 83, which Mr. Bingert joins, *see* ECF No. 86, will help to clarify the tasks before the parties as they enter the final stages of trial preparation. For the reasons that follow, the Court will **GRANT** in part and **DENY** in part defendants' discovery motion.

### I. BACKGROUND

On January 6, 2021, a joint session of Congress convened at the Capitol to certify the vote count of the Electoral College for the 2020 presidential election, with then-Vice President Mike Pence presiding. Statement of Facts at 1, ECF No. 1-1. At approximately 2:00 p.m., a large crowd that had gathered outside began to force its way violently into the Capitol, which was closed to the public at the time. *Id.* With the rioters inside the building, then-Vice President Pence and members of Congress were evacuated from the Senate and House chambers, suspending the joint session until approximately 8:00 p.m. *Id.*

1

The government alleges that Mr. Sturgeon and Mr. Bingert were a part of the mob that stormed the Capitol, that they intended to obstruct the electoral vote certification, and that they assaulted law enforcement officers in the process. Specifically, the government has charged Mr. Sturgeon and Mr. Bingert with eight counts: (1) obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (2) assisting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1); (3) civil disorder, in violation of 18 U.S.C. § 231(a)(3); (4) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (5) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (6) engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4); (7) obstructing, or impeding passage through or within, the grounds or any of the Capitol buildings, in violation of 40 U.S.C. § 5104(e)(2)(E); and (8) engaging in physical violence in the grounds or any of the Capitol buildings, in violation of 40 U.S.C. § 5104(e)(2)(F). *See* 2d Super. Indictment, ECF No. 53.

On October 17, 2022, Mr. Sturgeon filed a motion to compel discovery pursuant to Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Mot. to Compel. Specifically, Mr. Sturgeon makes the following discovery requests:

1. Any and all information pertaining to the investigation of the Secret Service after the Department of Homeland Security learned of the deletion of messages before and after January 6, 2021. More specifically, and in addition, letters or memoranda detailing efforts or lack of efforts to preserve these text messages and reasons for the failure to preserve.

2. Any Secret Service and/or Capitol Police communications, including text messages, emails, radio calls pertaining to the events on January 6, 2021. More specifically, communications pertaining to: (1) the decision to declare parts of the Capitol Grounds and Complex restricted (including identification of any such restricted area and mechanisms used to delineate restricted areas[], (2) any steps taken to communicate restricted areas to the public, (3) the reasons the certification proceedings were

> delayed, (4) the status of any sign postings, racks, cordons, or other restrictions after the certification proceedings were halted, (5) the status of any open or unlocked doors after the certification proceedings were halted, (6) the identity/actions of any law enforcement personnel who encouraged activity among the crowd at the Capitol or Capitol Grounds on January 6, 2021.
>
> 3. Any communications between former President Trump's staff on the day of January 6, 2021, regarding former President Trump's failure to stop the riot as well as affirmative steps he took to further encourage it.

*Id.* at 2 (footnotes omitted). Mr. Sturgeon represents that as of the time of his motion, he had made most of the same requests of prior government counsel but received no response. *Id.* at 1 n.1. He acknowledges that current government counsel had not seen these requests until his motion. *Id.* Mr. Bingert filed a motion to join Mr. Sturgeon's motion on November 6, 2022, which the Court will grant.[1]

The government filed its opposition to the motion to compel on December 6, 2022. ECF No. 98. The government argues that it "has provided voluminous discovery in this case and has attempted to be as helpful as possible in working with the defense to help them understand and utilize these materials." *Id.* at 2. Specifically, the government represents that it has uploaded significant amounts of video and documentary evidence to two online databases accessible by all January 6 defendants. *Id.* at 2–4. The government then argues that to the extent Mr. Sturgeon requests discovery to which he is entitled, the government has already provided that discovery. *Id.* at 4–9.

Mr. Sturgeon filed his reply on December 20, 2022. ECF No. 101. In it, he refutes some of the government's specific arguments about its *Brady* obligations and argues more generally that the government is obligated to provide more case-specific discovery rather than just making

---

[1] Additionally, the Court will grant Mr. Bingert's motion to join Mr. Sturgeon's motion to transfer venue, ECF No. 82.

3

countless files available generally to all January 6 defendants. *Id.* at 2–11. The motion is now ripe for review.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 16(a)(1)(E) provides as follows:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Furthermore, the government has a constitutional obligation, as recognized in *Brady*, 373 U.S. at 87, to disclose "evidence in its possession that is favorable to the accused and material either to a defendant's guilt or punishment," *United States v. Trie*, 21 F. Supp. 2d 7, 23 (D.D.C. 1998). "Evidence is material 'as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Evans*, 22-cr-63-RCL, 2022 WL 16758553, at *3 (D.D.C. Nov. 8, 2022) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks and citation omitted)).

## III. DISCUSSION

The Court notes at the outset that Judge John D. Bates granted in part and denied in part a virtually identical motion to compel discovery in *United States v. Sheppard*, No. 21-cr-203-JDB, 2022 WL 17978837, at *10–15 (D.D.C. Dec. 28, 2022). The Court agrees with Judge Bates's reasoning insofar as it applies to the discovery circumstances of this case. For the reasons that

4

follow, the Court will deny defendants' requests for additional production from the government but will order the government to identify within its existing disclosures case-specific evidence of which it is aware in certain categories.

### A. USSS Is a Part of the Prosecution Team

As an initial matter, the government opposes all of defendants' discovery requests involving United States Secret Service ("USSS") records, arguing that the USSS is not a part of the "prosecution team" in this case, and therefore the government has no obligation to learn of or disclose records in the USSS's possession. Opp'n at 4–5. The Court disagrees.

For *Brady* purposes, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Here, as defendants note, the USSS is "a law enforcement agency [that was] directly involved in the events on January 6, 2021." Reply at 3. The government argues for a more restrictive standard—that in order to be considered an arm of the government for purposes of this case, the USSS would need to be the law enforcement agency that *investigated* the charged crimes, which was in fact the FBI. Opp'n at 4–5. And the government cites a Second Circuit case holding that a USSS agent was not part of the prosecution team for purposes of that case. *See United States v. Stewart*, 433 F.3d 273, 297–98 (2d Cir. 2006).

As Judge Bates recognized in *Sheppard*, *see* 2022 WL 17978837 at *10–11, the government misunderstands the applicable standard. The government's *Brady* and Rule 16 obligations extend to "files maintained by branches of government *closely aligned* with the prosecution," *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (internal quotation marks and citation omitted) (emphasis added), not just those in charge of the investigation of the ultimate case. Here, "[t]he USSS played an integral role in aspects of January 6, and the document-

5

sharing between the USSS and the U.S. Attorney's Office suggests that the government declining to search for and produce potentially material documents from the USSS 'would clearly conflict with the purpose and spirit of the rules governing discovery in criminal cases.'" *Sheppard*, 2022 WL 17978837, at *11 (quoting *United States v. Libby*, 429 F. Supp. 2d 1, 11 (D.D.C. 2006)).

The Second Circuit's opinion in *Stewart* is consistent with that understanding. In that case, the Second Circuit affirmed the district court's finding that a single USSS agent called as an expert witness by the government was "an ordinary expert witness and not [] part of the 'prosecution team.'" *Stewart*, 433 F.3d at 298. The witness was "a civilian employee of the United States Secret Service and its Laboratory Director and Chief Forensic Scientist," and there was no allegation that the Secret Service was otherwise involved in the case. *Id.* at 295. The Second Circuit specifically noted that the district court *did not* "dismiss[] the imputation argument as applicable only to law enforcement officials who were involved with the investigation." *Id.* at 298.

Because of the USSS's extensive involvement as a law enforcement agency in the events of January 6 and its extensive cooperation with the U.S. Attorney's office in gathering evidence for this case, the government is not categorically excused from all *Brady* and Rule 16 obligations related to evidence in the possession of the USSS.

### B. Defendants Largely Seek Material That Is Already Disclosed or Not Required to Be Disclosed

The Court will now consider each of defendants' discovery requests in turn.

The Court notes at the outset that much of the argument over the relevance of the material defendants seek centers on whether defendants knew themselves to be in a restricted building for purposes of the three counts charged under 18 U.S.C. § 1752. The subsections of that statute under which defendants are charged criminalize the following conduct:

> (1) knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so;

6

> (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; . . . [and]
>
> (4) knowingly engag[ing] in any act of physical violence against any person or property in any restricted building or grounds[.]

18 U.S.C. §§ 1752(a)(1), (2), (4). The statute defines "restricted buildings or grounds," in relevant part, as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." *Id.* § 1752(c)(1)(B). Evidence about the status of barriers, signage, or other indicators that the public was not allowed in certain areas of the Capitol grounds on January 6 could thus theoretically be relevant to defendants' state of mind with respect to three of the eight charged offenses.

For the reasons that follow, the Court concludes that defendants' first and third discovery requests seek evidence that would be entirely irrelevant in this case and thus immaterial for *Brady* or Rule 16 purposes. However, the Court concludes that the government is obligated to identify case-specific discovery within its existing disclosures under three of the six categories of evidence sought in the second discovery request.

### 1. Deletion of USSS communications

Defendants' first discovery request is for "[a]ny and all information pertaining to the investigation of the Secret Service after the Department of Homeland Security learned of the deletion of messages before and after January 6, 2021. More specifically, and in addition, letters or memoranda detailing efforts or lack of efforts to preserve these text messages and reasons for the failure to preserve." Mot. to Compel at 2 (footnote omitted). Defendants cite news articles reporting that USSS agents appear to have deleted text messages sent on January 6, *see id.* at 2 n.2, but they do not purport to know the subject-matter of those messages.

Where a defendant merely speculates that missing evidence could be useful, that defendant must satisfy the standard set out in *Arizona v. Youngblood*: "unless a criminal defendant can show bad faith on the part of [law enforcement], failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. 51, 57–58 (1988). "*Youngblood* thus confines the Due Process Clause to superintending only those cases in which the missing evidence is material and exculpatory or in which 'the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.'" *United States v. Vega*, 826 F.3d 514, 533 (D.C. Cir. 2016) (quoting *Youngblood*, 488 U.S. at 58).

Here, defendants argue (1) that evidence that messages were deleted "is relevant to impeachment testimony and the ability of the defense to potentially rebut the government's claim that all areas were clearly restricted at all times"; (2) that "information about the status of the restrictions as the afternoon progressed is relevant to when exactly some of those signs may have not been visible to certain individuals depending on when they arrived"; and (3) that "information regarding former President Trump's inactions/actions before, during, and after January 6, 2021, are directly relevant to a potential" public authority defense. Mot. to Compel at 7. But none of those explanations demonstrate why the evidence sought would be material to defendants' guilt or punishment, nor can defendants point to any evidence of bad faith.

The first two arguments are closely related and fail for similar reasons. "[T]he USSS was not responsible for setting up or maintaining the restricted area perimeter," and defendants "offer[] no reason why the messages at issue would shed light on the position of barriers at the relevant time." *Sheppard*, 2022 WL 17978837, at *13. All defendants are left with is mere speculation as to the contents of the messages, and thus the *Youngblood* standard applies. Defendants fall far

8

short of meeting that standard, as they do not even attempt to argue that there is evidence the USSS deleted any messages in bad faith.

The third argument fares no better. While it is more than speculative "that USSS agents . . . had input on former President Trump's movements" on January 6, *id.*, it is unclear why "information regarding [his] inactions/actions before, during, and after" that day would be relevant to a potential public authority defense in this case, Mot. to Compel at 7. Assuming without deciding that a public authority defense based on former President Trump's words or actions could theoretically be available in this case, to avail themselves of that defense or the closely related entrapment-by-estoppel defense,[2] defendants would have to show that they "actually relied on" a pronouncement then-President Trump made about the law, *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (Howell, C.J.); *see also Sheppard*, 2022 WL 17978837, at *9. By its very nature, information about former President Trump's actions and inactions conveyed in non-public messages cannot have been "actually relied on" by defendants. And once again, defendants point to no evidence whatsoever of bad-faith destruction of the messages.

Because defendants provide no satisfactory explanation as to why the information contained in the allegedly deleted USSS messages or the fact of their deletion would be material to defendants' guilt or punishment, nor do they even argue that the messages were deleted in bad faith, the Court will deny the motion with respect to the first discovery request.

---

[2] There appears to exist some disagreement in this District as to whether the public authority and entrapment-by-estoppel defenses are two distinct defenses or one and the same. *Compare United States v. Carpenter*, No. 21-cr-305-JEB, 2023 WL 1860978, at *2 (D.D.C. Feb. 9, 2023) ("The Government next moves to preclude Carpenter from raising as an affirmative defense entrapment by estoppel, also sometimes referred to as the 'public authority' defense."); *with United States v. Navarro*, — F. Supp. 3d —, 2023 WL 371968, at *15 (D.D.C. Jan. 19, 2023) ("The entrapment-by-estoppel defense differs from the public authority defense . . . ." (quoting *United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015) (internal quotation marks omitted))). The Court need not decide at this stage whether there is a meaningful difference between the two, because the discovery defendants seek is irrelevant under either theory.

## 2. Specific categories of USSS and USCP communications

Defendants' second discovery request is as follows:

> Any Secret Service and/or Capitol Police communications, including text messages, emails, radio calls pertaining to the events on January 6, 2021. More specifically, communications pertaining to: (1) the decision to declare parts of the Capitol Grounds and Complex restricted (including identification of any such restricted area and mechanisms used to delineate restricted areas[], (2) any steps taken to communicate restricted areas to the public, (3) the reasons the certification proceedings were delayed, (4) the status of any sign postings, racks, cordons, or other restrictions after the certification proceedings were halted, (5) the status of any open or unlocked doors after the certification proceedings were halted, (6) the identity/actions of any law enforcement personnel who encouraged activity among the crowd at the Capitol or Capitol Grounds on January 6, 2021.

Mot. to Compel at 2. The Court will consider each of these categories in turn.

The first, second, and fourth categories are closely related: (1) "the decision to declare parts of the Capitol Grounds and Complex restricted (including identification of any such restricted area and mechanisms used to delineate restricted areas,"[3] (2) "any steps taken to communicate restricted areas to the public," and (4) "the status of any sign postings, racks, cordons, or other restrictions after the certification proceedings were halted." Mot. to Compel at 2. The government represents that it has "already made materials regarding such notifications" and visible markers of restrictions "available to the defendant[s]." Opp'n at 9. Defendants respond that it is not enough to make mountains of evidence—some of which is irrelevant to their own specific cases—available in a general repository for all January 6 defendants, asserting that "[t]he terabytes of discovery make

---

[3] The government argues, and the Court agrees, that the reason *why* certain areas were restricted is irrelevant to defendants' state of mind in entering those areas. *See* Opp'n at 8–9. However, defendants clarify in their reply that they seek evidence not "for the purpose of learning *why* the decision was made," but rather "to learn whether or not the procedures surrounding the execution of the restrictions were visible and clear to [them]." Reply at 5 (emphasis in original).

it nearly impossible for the defense to find items specifically relating to Mr. Sturgeon" and Mr. Bingert. Reply at 7.

Defendants cite no authority for the proposition that the government fails to meet its *Brady* or Rule 16 obligations by providing *too much* discovery. And like Judge Bates, this Court "is wary of requiring the government to, in effect, do defense counsel's work for them and of inserting itself into the fray of micromanaging discovery in these cases." *Sheppard*, 2022 WL 17978837, at *14. On the other hand, the Court is sympathetic to the needle-in-the-haystack problem defendants face when confronted with such enormous amounts of discovery, only some of which is relevant to their cases, particularly since defense counsel have comparatively fewer resources at their disposal for identifying which evidence is relevant. *See United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998).

Ultimately, the Court concludes that the solution that Judge Bates reached in *Sheppard* strikes the proper balance between the government's obligations and the defense's own responsibilities: "'to the extent that the government knows of any [*Brady*] material in its production'" related to these three categories of information, "the Court will 'require [the government] to identify' it." 2022 WL 17978837, at *14 (alterations in original) (quoting *United States v. Saffarinia*, 424 F. Supp. 3d 46, 86 (D.D.C. 2020)).

The remaining three subparts of defendants' second discovery request are moot.

The third subpart of defendants' second discovery request seeks communications related to "the reasons the certification proceedings were delayed." Mot. to Compel at 2. The government represents that it has already provided such discovery, Opp'n at 9, and defendants do not dispute that representation, *see* Reply at 5–9. Accordingly, the Court will deny this part of the discovery motion as moot.

11

The fifth subpart of defendants' second discovery request seeks communications related to "the status of any open or unlocked doors after the certification proceedings were halted." Mot. to Compel at 2. The government responds that "the status of the doors is not relevant," because "whether additional measures could have been taken to prevent a crime is not a defense." Opp'n at 9. That may be true with respect to doors that Mr. Sturgeon and Mr. Bingert did not personally use or observe, but evidence that doors they *did* use or observe were locked or unlocked would be potentially relevant to whether the understood themselves to be entering a restricted area. At any rate, the government represents that "to the extent [it has] such information that has not previously been provided, it will be," *id.*, and defendants do not dispute that representation, *see* Reply at 5–9. Accordingly, the Court will similarly deny this part of the discovery motion as moot.

The sixth subpart of defendants' second discovery request seeks communications related to "the identity/actions of any law enforcement personnel who encouraged activity among the crowd at the Capitol or Capitol Grounds on January 6, 2021." Mot. to Compel at 2. In response, the government represents that it "does not have any information that any law enforcement personnel 'encouraged activity among the crowd,'" and that it has "already produced all surveillance video depicting law enforcement's interaction with the mob on January 6," as well as "materials related to any allegations of misconduct by law enforcement personnel that day." Opp'n at 9. Again, defendants do not dispute that representation. *See* Reply at 5–9. Accordingly, the Court will deny this part of the discovery motion as moot.

### 3. Former President Trump's communications

Finally, in their third discovery request, defendants seek "[a]ny communications between former President Trump's staff on the day of January 6, 2021, regarding former President Trump's failure to stop the riot as well as affirmative steps he took to further encourage it." Mot. to Compel

at 2. The government responds that such communications could only conceivably be relevant to a public authority defense, which the Court should not allow defendants to present. Opp'n at 8 n.3. Defendants reply that the public authority defense is indeed available and that the communications sought could also be relevant to their state of mind when they entered the Capitol. Reply at 9–11. Defendants' arguments are unavailing.

First, assuming without deciding that some version of the public authority or entrapment-by-estoppel defense may theoretically be available in this case, communications between former President Trump and his staff could not be relevant to those defenses because defendants would not have been aware of those communications, and thus could not have relied on their contents. As explained above, to avail themselves of either defense, defendants would have to show that they "actually relied on" a pronouncement former President Trump made about the law. *Chrestman*, 525 F. Supp. 3d at 31; *see also Sheppard*, 2022 WL 17978837, at *9. There is no suggestion that defendants were privy to any of the communications they seek or the content of those communications, and defendants could not possibly have "actually relied on" statements of which they were unaware.

Similarly, communications to which defendants were not privy would be entirely irrelevant to their state of mind. Defendants, again, were "not aware of the communications sent between President Trump's former staff on January 6," and thus "they have no bearing on [defendants'] intent." *Sheppard*, 2022 WL 17978837, at *15. And for the same reason, if defendants were ultimately convicted, these communications would have no bearing on the "nature and circumstances" of their offenses, nor any other factor relevant at sentencing. *See* 18 U.S.C. § 3553(a).

Moreover, regardless of the purposes for which defendants might wish to offer the communications they seek, they have "not shown that those messages are within the 'possession, custody, or control' of the prosecution." *Sheppard*, 2022 WL 17978837, at *15.

Because communications between former President Trump and his staff would not be relevant for any purpose at trial, whether to bolster an affirmative defense or to negate an element of an offense, nor would they be relevant at sentencing if defendants were ultimately convicted, the Court will deny the motion with respect to the third discovery request.

### IV.   CONCLUSION

For the foregoing reasons, the Court will **GRANT** in part and **DENY** in part defendants' motion to compel discovery. Specifically, to the extent that the government is aware of communications regarding "the decision to declare parts of the Capitol Grounds and Complex restricted (including identification of any such restricted area and mechanisms used to delineate restricted areas)"; "any steps taken to communicate restricted areas to the public"; and "the status of any sign postings, racks, cordons, or other restrictions after the certification proceedings were halted," Mot. to Compel at 2, that pertain to Mr. Sturgeon and Mr. Bingert in particular, the Court will order it to identify that information to defendants if it has not already done so. The Court will not order any further disclosures. A separate Order shall issue this date.

Date: May 2, 2023

Royce C. Lamberth
United States District Judge