# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

        *Plaintiff,*

   v.

**ISAAC STURGEON,**

        *Defendant.*

**Case No. 21-cr-91 (RCL)**

## MOTION TO DISMISS FOR FAILURE
## TO TIMELY DISCLOSE *BRADY*
## MATERIAL

## Introduction

Mr. Sturgeon respectfully moves this Court to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 16, the "Due Process Protection Act," embodied in Federal Rule of Criminal Procedure 5(f), Local Criminal Rule 5.1, and *Brady v. Maryland*, for the government's intentionally late disclosure of *Brady* material, namely, information related to plainclothes Metropolitan Police Officers (MPD) present on January 6, 2021, who participated in protest activities and encouraged protestors to commit violations of law that the government now charges in this case.[1]

## Background

On October 12, 2022, pursuant to *Brady v. Maryland* and its progeny, Mr. Sturgeon made specific requests via email for the government to produce all information related to the following:

- "The identity/actions of any law enforcement personnel who encouraged activity among the crowd at the Capitol or Capitol Grounds on January 6, 2021."

The government did not respond to this letter, which led counsel for Mr. Sturgeon to file a Motion to Compel Discovery on October 17, 2022.[2] *See* ECF No. 83. The government responded to this motion two months later, on December 6, 2022, stating that "the government does not have any information that any law enforcement personnel encouraged activity among the crowd." *See* ECF No. 98 at 9.

---

[1] Undersigned counsel conferred with counsel for Mr. Bingert, who wishes to join this motion.

[2] Notably, counsel also submitted this request to previous government counsel, who has since left the office, in July of 2022 – and was also met with no response.

The government also noted generally that it did not have any obligation to identify specific materials as the defense counsel already has access to the multiple terabytes of information it had provided to counsel and that it was not obligated to essentially do the defense's job. In response, Mr. Sturgeon insisted that at a minimum, that government counsel was required to identify exculpatory information at the defendant's request. *See* ECF No. 101.

On May 2, 2023, the Court issued its ruling on defendant's motion to compel. The Court denied the specific request outlined above as moot based on the representation by government counsel that it did not have such information. *See* ECF No. 140 at 12. However, with regards to three specific categories of other requested information, the Court ordered government counsel to identify *Brady* to the extent it is aware of its existence. *Id.* at 11. Notably, one of these categories of information included the efforts made by law enforcement to communicate that the area was restricted. Evidence of any undercover officers doing the opposite – namely urging members of the crowd to move forward towards the Capitol building – would be responsive to this request. The Court ordered such information be turned over to the defense within 24 hours of its order issued on May 2, 2023. As such, the government is also in clear violation of the Court's order.

Last night, on May 8, 2023, a week prior to trial in this matter, the government disclosed this exact requested *Brady* material that it apparently has been aware of since, at a minimum, February of this year. *See* ECF No. 146 (citing to *U.S v. William Pope*, 21-cr-128 (RC), a matter in which filings dating back to

2

February of 2023 clearly show the government's awareness of this exculpatory information).[3] Rather than acknowledge the blatant *Brady* violation, the government unilaterally and baselessly decrees that this information is irrelevant to Mr. Sturgeon's case. This is outrageous and egregious government behavior that requires dismissal of the indictment. Furthermore, rather than actually providing the materials to defense counsel, the government simply states that the materials are contained within the "global discovery," which consists of terabytes of data, literally thousands and thousands of documents and videos.[4] This the government does on the eve of trial in a case that has been pending for well over two years.

The importance of this *Brady* information cannot be understated. It evidently shows government agents among protesters chanting and at least one undercover officer encouraging protesters to move towards the Capitol building in the area it now claims is restricted. These MPD officers were acting in their official capacity. According to the government there are videos and statements regarding these activities, including 67 videos by this supposed undercover unit that again was just

---

[3] The *Pope* filing by the government describes the relevant videos this way:
Go Pro video recorded by an MPD Police Officer who was stationed at the Capitol in an evidence gathering capacity, captures the officer shouting words to the effect of "Go! Go! Go!" (MPD-005-000035 at time stamp 2:37), "Go"Go! Go!" (MPD-005-000035 at time stamp 7:23, and "Keep going! Keep going!" (MPD-005-000035 at time stamp 8:16) apparently to the individuals in front of him on the balustrade of the U.S. Capitol's northwest staircase around 2:15 p.m. At other times in these videos, the officer and the two other plan clothes officers with him appear to join the crowd around them in various chants to include "drain the swamp." "USA! USA!, and "Whose house? Our house!" *U.S. v. William Pope*, 21-cr-128 (RC), ECF No. 90.

[4] Undersigned counsel has spent the better part of the day working with our paralegals to promptly identify and download this information with no assistance from the government. As such, we have not yet been able to understand the full extent of what is contained in these materials.

placed in the middle of the massive "global discovery" productions. Furthermore, what is not contained in this brief supplement provided by the government - is even more shocking. Undersigned counsel has since learned that other government counsel at the USAO have promised the Office of the Federal Public Defender a fulsome report providing further information regarding an audit of the Electronic Surveillance Unit files that was performed in an effort to locate relevant evidence. This report has not yet been produced. Undersigned counsel has also since learned that there were actually 25 plainclothes MPD officers present at the Capitol on January 6, 2021, and that officers were recording video with different devices, including cell phones.

The presence of undercover law enforcement officers at the Capitol on January 6 who were pretending to participate in the protest and encouraging protesters to break the law is directly relevant to Mr. Sturgeon's defense in this case. Disclosure of this information to Mr. Sturgeon one week before he is scheduled to commence trial is entirely unacceptable and severely prejudices him because he has no meaningful ability at this late date to meaningfully investigate the conduct of the members of this undercover unit. Particularly in light of widely-publicized allegations by protestors and their supporters that law enforcement infiltrators encouraged lawlessness on January 6, it strains credulity that the government was unaware that undercover officers present at the Capitol on January 6 engaged in this conduct.

Accordingly, Mr. Sturgeon moves this Court to sanction the government for intentionally withholding critical information. The government should not be permitted to put defense counsel in its current position by engaging in such gamesmanship—indeed, the Due Process Protection Act was passed in order to prevent precisely these types of machinations by the government. In order to sufficiently sanction the government for its purposeful belated and half-hearted disclosure, Mr. Sturgeon moves this Court to dismiss the indictment. Mr. Sturgeon also requests a hearing on this matter to uncover the full extent of the government's violations.

## Argument

As it is well understood, the government has specific disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. Specifically, in the pretrial setting, *Brady* requires disclosure of any information that is "favorable" to the defense, "without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005). Favorable information includes any information "that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses." *Id*.

Additionally, as stated in *United States v. Moore*, "[i]n this circuit, the government must disclose material in sufficient time for the defendant to use the favorable material effectively in the preparation and presentation of his or her case. 867 F. Supp. 2d 150, 151 (D.D.C. 2012) (quotations omitted); *see also* Local

Criminal Rule 5.1 ("[T]he government shall make good-faith efforts to disclose such information to the defense as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case."). Additionally, Rule 16 makes clear that the government "*must promptly disclose*" discoverable evidence that was previously requested. Fed. R. Crim. P. 16(c) (emphasis added).

The government's *Brady's* pre-trial disclosure obligations are different from their obligation in the post-conviction context because there is no prejudice requirement in the pretrial setting. As explained in *Safavian* "[b]ecause the definition of [prejudice] discussed in *Strickler* and other appellate cases is a standard articulated in the post-conviction context for appellate review, it is not the appropriate one for prosecutors to apply during the pretrial discovery phase." 233 F.R.D. at 16; *see also United States v. Moore*, 867 F. Supp. 2d 150 (D.D.C. 2012) (same); *United States v. Singhal*, 876 F. Supp. 2d 82, 104 (D.D.C. 2012) (same); *United States v. Naegele*, 468 F. Supp. 2d 150, 153 (D.D.C. 2007) (same); *United States v. Olsen*, 704 F.3d 1172, 1883 n.3 (9th Cir. 2013) ("[S]ome trial courts therefore have concluded that the retrospective definition of materiality is appropriate only in the context of appellate review, and that trial prosecutors must disclose favorable information *without attempting to predict whether its disclosure might affect* the outcome of the trial." (emphasis added).

Indeed, in *Safavian*, Judge Friedman emphatically rejected the government's contention that, in the pretrial setting, *Brady* only required

disclosure of items that would have an impact on the outcome of the trial. *Safavian*, 233 F.R.D. at 16. As Judge Friedman recognized, "[t]he problem with this iteration of *Brady* and the government's view of its obligations at this stage of the proceedings, however, is that it permits prosecutors to withhold admittedly favorable evidence whenever the prosecutors, in their wisdom, conclude that it would not make a difference to the outcome of the trial." *Id.*

Although materiality is not required at this stage, evidence showing that the government itself was complicit in some of the alleged crimes has countless legal implications that would undoubtedly affect the outcome of this trial. Under *Brady*, the defense is entitled to review and further investigate material information in the government's possession. *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence ... as well as exculpatory evidence falls within the Brady rule.")

The government's claim here that this information is not relevant to the defendants in this case further demonstrates why the defense is entitled to review and further investigate this type of information. In its brief supplement, the government states that "it has not located any evidence indicating these events took place within the vicinity of defendants Bingert and Sturgeon.....and is aware of no indication that Bingert saw or heard these officer's statements or actions on that day." *See* ECF No. 146. It is unclear how the government at this point can confidently make these assertions when (1) it has recently provided several other late disclosures providing new locations Mr. Sturgeon traveled in on the Capitol

Grounds, and (2) has absolutely no idea what conversations the defendants had with others on the grounds that day. Notably, we do not know at this point the areas they traveled and whether or not there were more officers in different areas – especially now that we know there were at least 25 total plain clothes officers present. So, for the government to flippantly dismiss this *Brady* evidence is concerning and demonstrates its lack of understanding of the purpose and importance of *Brady*. Lastly, the government is just wrong that Mr. Sturgeon was not in the general location of these officers. In fact, in one video, a plain clothes officer is shown to be on the very same bleachers below the upper west terrace that Mr. Sturgeon was present at least in point in time. Also, the time periods of the plain clothes officers' presence on the grounds aligns with the time periods Mr. Sturgeon was present on the Capitol Grounds. This finding is just based on preliminary review of just a small portion of this new evidence.

Here, the government plainly violated its *Brady* and discovery obligations. They not only violated *Brady* but they did so intentionally as they knew about this information several months ago. As explained above, there was no justifiable reason for the government to wait to disclose this information given defense counsel's repeated requests for it spanning several months as well as its requests for postponement of trial based partly on a belief there was still outstanding discovery to be reviewed. This was information that they know is critical to the defense and will need to be reviewed and investigated.

Additionally, the eleventh-hour disclosure does not allow the defense to

make use of the information in any meaningful way. The videos and reports referenced will require additional investigation and potentially additional witnesses. It will also require time that the defense does not have at this point. The government has essentially made it impossible for defense counsel to make use of this information at trial. Furthermore, it has completely failed to mention a report that will shed light on this government activity that is supposedly forthcoming. It is mindboggling how the government has represented it is ready for trial when it knows very well that defense counsel will not have access to yet another piece of *Brady* material it knows will surface itself after the trial in this matter.

In light of the government's clear and unnecessary *Brady* violation, a sanction is necessary. Given the entire record, this violation is so egregious that dismissal is the only way to ensure that the government will not conduct themselves in this manner again. Accordingly, Mr. Sturgeon respectfully requests that this Court dismiss the indictment.

Respectfully submitted,

A. J. Kramer
Federal Public Defender

*/s/*
Maria N. Jacob
Edward Smock
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004