**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-91 (RCL)** |
| | : | |
| **CRAIG MICHAEL BINGERT and ISAAC STEVE STURGEON,** | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES' RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO CONTINUE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Isaac Sturgeon's Motion to Dismiss (Dkt. 149), which defendant Craig Bingert seeks to join. The defendants allege malicious wrongdoing by the government, without any legal analysis or rationale for their requested relief, when the plain facts are entirely contrary to their unsupported claims. The defendants also use the alleged late disclosures as the basis for their third motion to continue the trial. Dkt. 150, 151. The motions must be denied.

**A. Applicable Law**

The prosecution is required to disclose "evidence favorable to an accused." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Youngblood v. West Virginia,* 547 U.S. 867, 869 (2006). "Evidence favorable to an accused" is exculpatory and impeachment evidence that is material to either the issue of guilt or punishment. *Strickler v. Greene,* 527 U.S. 263, 280 (1999). "For an item to be *Brady*, it must be something that is being 'suppress[ed] by the prosecution.'" *United States v. Blackley*, 986 F. Supp. 600, 603 (D.D.C. 1997). Moreover, there is no *Brady* violation when the evidence is disclosed in sufficient time for the defense to make effective use of it. *United States v. Andrews*, 532 F.3d 900, 907 (D.C. Cir. 2008) (no error in mid-trial disclosure of potential

impeachment material when the defendant was able to make effective use of the information). Nor is there any *Brady* violation if the evidence at issue is not materially favorable to the defense. *See United States v. Sheppard*, No. CR 21-203 (JDB), 2022 WL 17978837, at *10 (D.D.C. Dec. 28, 2022).[1]

Where a defendant claims a violation of these rules, the D.C. Circuit has explained that the Court must conduct a three-part inquiry:

> A *Brady* violation has three parts. 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'

*United States v. Mason*, 951 F.3d 567, 573 (D.C. Cir. 2020) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). When assessing an alleged *Brady* violation, "even a grossly belated disclosure does not violate *Brady* unless the defendant suffers prejudice from the delay." *Id*.

**B. The United States Has Complied with Its Discovery Obligations**

No *Brady* violation has occurred here. First, no evidence was suppressed; the materials the defendants point to as "exculpatory" have been in their possession since January 2022. Second, the materials are not exculpatory. Third, there is no prejudice.

**1. The materials have been in the defendants' possession since January 2022.**

[1] As in *Sheppard*, the defendants here (Dkt. 149 at 5) ask the Court to adopt the standard for pretrial disclosure under *Brady* articulated in *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005): any evidence that "may be 'favorable to the accused' ... must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial." *Cf. United States v. Bagley*, 473 U.S. 667, 682 (1985) (evidence is material under *Brady* if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"); *see also Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). Dkt. 149 at 5. As Judge Boasberg found in *Sheppard*, "[p]ractically speaking—and, for the situation presented here—there is unlikely to be much daylight between the two standards."

The defendants complain that the government suppressed information related to plainclothes Metropolitan Police Department (MPD) officers present in the crowd at the U.S. Capitol on January 6, 2021, with its "intentionally late disclosure" of that material. Dkt. 149 at 2. This is simply incorrect. On January 14, 2022, as the defendants are aware, the government produced to all defendants 65 videos and six reports from MPD's Electronic Surveillance Unit (ESU). In its cover letter describing the discovery, excerpted below, the government clearly noted that these videos were "recorded by officers dressed in plain clothes."

> Files from MPD's Electronic Surveillance Unit including 6 reports and 65 videos recorded by officers dressed in plain clothes. These materials are designated Sensitive under the protective order (CAPD_000003712 - CAPD_000003798).

The disclosure included bates numbers to allow the defense to easily find the materials.

Following a March 2023 inquiry made by an attorney at the Office of the Federal Public Defender specifically asking about the ESU materials disclosed in January 2022, the government obtained two additional ESU videos from MPD in late March 2023, and produced those two additional videos on April 6, 2023, in global discovery, again with a letter describing that the videos were "recorded by a plain clothed officer."

> Videos from MPD's Electronic Surveillance Unit recorded by a plain clothed officer. These are designated as Sensitive under the protective order (CAPD_008469631 - CAPD_008469632).

It is notable that in the defendants' Motion to Dismiss, defense counsel failed to alert the Court that these materials were made available to the defense long before the government filed the May 8, 2023, Supplement (Dkt. 146). This omission by the defense may lead this Court to erroneously believe that the May 8, 2023, filing was the first time this material had been produced

to the defense. As noted above, the vast majority of this material has been in the possession of the defense since January 2022. There simply cannot be a *Brady* violation when the very materials the defense seeks were provided to the defense, by the government, through the discovery process in this case.

Furthermore, these materials have been the subject of public filings. As noted in the government's May 8 Supplement, the materials are described in further detail at *United States v. Pope, et al.*, D.D.C. Case No. 21-cr-128-RC (Dkt. 90, at 2); *see also id*. (Dkts. 72 at 22-24, 81 at 14, 82 (Motion to Remove Designation of 'Sensitive' From Undercover MPD Videos and Release Them to the Public), 94, 95, 100, 101, 102, 103, and 107).[2] These pleadings are all available to the public and to counsel for these defendants. As this Court has previously held, where information is available to the public, there can be no *Brady* violation. *United States v. Blackley*, 986 F. Supp. at 603 ("The policies requested by defense counsel are available to the public and something that can be readily obtained by others is, by definition, not "suppressed."); *see also United States v. Borda*, 941 F. Supp. 2d 16, 25 (D.D.C. 2013) ("there cannot be a *Brady* violation for failure to

[2] In that case, which was handled by a different team of prosecutors from the undersigned counsel, the government wrote:

The defendant's filings (ECF Nos. 72 and 82), refer to Relativity items MPD-005-000032, -000033, -000034, -000035, -000036, and -000037, disclosed January 14, 2022, as part of Global Production No. 10, related to six files from Metropolitan Police Department's ("MPD's") Electronic Surveillance Unit ("ESU"). The specific footage, GoPro video recorded by an MPD Police Officer who was stationed at the Capitol in an evidence-gathering capacity, captures the officer shouting words to the effect of "Go! Go! Go!" (MPD-005-000035 at time stamp 2:37), "Go! Go! Go!" (MPD-005-000035 at time stamp 7:23), and "Keeping going! Keep going!" (MPD-005-000035 at time stamp 8:16) apparently to the individuals in front of him on the balustrade of the U.S. Capitol's northwest staircase around 2:15 p.m. At other times in these videos, the officer and the two other plain clothes officers with him appear to join the crowd around them in various chants, to include "drain the swamp," "U.S.A.! U.S.A.! U.S.A.!", and "whose house? Our house!"

disclose public documents which the Defendants could have found on their own").[3]

**2. The materials are not exculpatory.**

Equally fatal to the defendants' claim, the materials they allege are "*Brady*" are not exculpatory. As reported to the Court in the May 8 Supplement filing, undersigned counsel has not located any evidence indicating that these events took place within the vicinity of defendants Bingert and Sturgeon. Evidence of plainclothes police officers participating in chants or yelling "Go! Go! Go!" to the crowd *could arguably* be relevant to the defense *if* the defendants were in a position to observe those actions. But at this time, undersigned counsel is unaware of any evidence that these defendants saw or heard these officers when the officers were engaging with the crowd in that manner. Without any reason to believe there is a factual nexus to these defendants, there is no basis to speculate, as the defendants do, that the materials are favorable to the defense.

Upon review of the Court's Order dated May 2, 2023, the government immediately endeavored to compile any case-specific evidence in its existing disclosures falling within the three categories ordered by the Court: "the decision to declare parts of the Capitol Grounds and Complex restricted (including identification of any such restricted area and mechanisms used to delineate

[3] In addition, despite the Sensitive designation of these materials under the Protective Order governing January 6-related discovery, these materials have been the subject of public reporting, including video clips of some of the MPD ESU footage. On March 25, 2023, despite the Protective Order, relevant clips identifying the officers by number and adding closed captioning were publicly posted. The most-viewed post in the thread containing the videos has been watched nearly 75,000 times. In addition to the thousands of views that they received in their native form, this footage was extensively retweeted; one January 6 defendant reposted ESU video in a Twitter thread with more than 32,000 views. They have also been publicly reported on in The Epoch Times. *See* Joseph M. Hanneman, "Undercover DC Police Officer Pushed Protesters Toward Capitol," The Epoch Times, February 18, 2023, available at https://www.theepochtimes.com/undercover-dc-police-officer-pushed-protesters-toward-capitolclimbed-over-barricade-courtfiling_5067663.html?utm_source=partner&utm_campaign=ZeroHedge&src_src=partner&src_cmp=ZeroHedge.

restricted areas)"; "any steps taken to communicate restricted areas to the public"; and "the status of any sign postings, racks, cordons, or other restrictions after the certification proceedings were halted," pertaining to Defendant Bingert or Defendant Sturgeon. On May 3, 2023, the government reported to the defense that it was aware of no additional evidence that had not already been produced to these defendants specifically as part of its more limited case-specific discovery. The government also reviewed its December 6, 2022, response to the defense motion that resulted in the Court's order. At that time, undersigned counsel determined that more recent information *had* come to light regarding the December 2022 statement that the government "does not have any information that law enforcement personnel 'encouraged activity among the crowd.'" Dkt. 98 at 9. Undersigned counsel filed the May 8 Supplement merely to update the Court with the subsequently-obtained information about MPD's ESU materials—to ensure the record was accurate and complete, *not* because the defendants did not have the materials or because of any indication that the materials were *Brady* as relates to these defendants.

Notably, the defendants do not claim that these materials include any specific exculpatory evidence. Sturgeon claims that "in one video, a plain clothes officer is shown to be on the very same bleachers below the upper west terrace that Mr. Sturgeon was present at least in point in time." Dkt. 149, at 9. This adds nothing to support the claim that the footage is exculpatory, because there is no claim that the time periods when the officers are present in that area are remotely in line with the time periods the defendants were there. For the evidence to be relevant, it must have some nexus to these defendants; both groups being "present on the Capitol Grounds" is insufficient to establish the requisite nexus. Even if the officers *were* in the vicinity where these defendants could have seen or heard them—a suggestion unsupported by any proffered evidence—the fact that the officers were in plain clothes and not identifiable to the crowd further undermines

any relevance to this or any other January 6 prosecution. The defendants have not articulated any basis for how the officers' conduct that day could impact whether these defendants acted knowingly and willfully when they engaged in the charged conduct.

**3. The defendants have alleged no facts to support prejudice.**

While the defendants' motions assert that they have been "severely prejudiced" by the alleged *Brady* violation, they do not identify any specific form of prejudice that warrants dismissal of the indictment. Even if their *Brady* claims were valid and materials were disclosed late, the defendants still must show a "reasonable probability that an earlier disclosure would have changed the trial's result" to establish prejudice. *United States v. Straker*, 800 F.3d 570, 603 (D.C. Cir. 2015). The defendants assert that they now lack a "meaningful ability at this late date to meaningfully investigate the conduct" of the ESU officers. That claim is speculative, and the defendants have access to all the video evidence available to the government in this case. There is no reason the defendants cannot review that video (if they have not already) and attempt to identify any relevant or admissible evidence, or even any evidence that requires follow-up. Instead, counsel has demanded dismissal of the indictment and a continuance of a trial that begins in five days without any indication that such "meaningful investigat[ion]" might result in any favorable evidence.

**C. No Facts Support the Extraordinary Remedy of Sanctions and Dismissal**

As a remedy for their perceived, but nonexistent, *Brady* violation, without any explanation or legal support, the defendants seek dismissal of the indictment. Counsel asserts that the government "intentionally" withheld information, without evidence or support. Dkt. 149, at 6, 9. This allegation is specious and unfounded. In fact, it was the government who alerted the Court and the defense to the information—a fact the defense does not dispute.

Even if the defendants had established a *Brady* violation here, "dismissal is appropriate only as a last resort, where no other remedy would cure prejudice against a defendant." *United States v. Pasha*, 797 F.3d 1122, 1139 (D.C. Cir. 2015), *citing Bank of Nova Scotia v. United States*, 487 U.S. 250, 263, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (holding that district court had no authority to dismiss where lesser remedy was available); *see also United States v. Evans*, 888 F.2d 891, 897 (D.C. Cir. 1989) ("where a *Brady* violation requires a remedy, relief is afforded by mistrial rather than dismissal").

**D. The Motion to Continue Should Be Denied**

The Motion to Continue should be denied for the same reasons set out above. Defendants also allege that there have been additional "late disclosures" by the government, stating, "the government continued to produce new evidence to the defense – including several body-worn camera videos depicting events that were previously unknown to the defense." Dkt. 150 at 2. But the defendants have had access to evidence.com which contains all of the body-worn camera footage in the January 6 investigations since very early in this case. As the government identified footage depicting the defendants in specific body-worn camera footage, it has sent the defense the names of the officers and the approximate times of the relevant footage as a courtesy. The government has made these disclosures consistently throughout this case starting in April 2021 and has continued that courtesy as it has prepared for trial and identified new video. There have been no "late" disclosures, and the Court should deny the defendant's motion for a continuance on this basis as well.

For the foregoing reasons, the United States respectfully submits that the defendants' motions to dismiss the indictment and to continue the trial date should be denied.

Dated: May 10, 2023

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
IL Bar No. 6316768
(202) 252-6778
Kaitlin.klamann@usdoj.gov

By: */s/ Courtney A. Howard*
COURTNEY A. HOWARD
Trial Attorney, Criminal Division
Detailed to the U.S. Attorney's Office
601 D Street NW
Washington, D.C. 20001
NY Bar No. 4513909
202-514-3130
Courtney.Howard2@usdoj.gov