## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Appellee,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cr-91 (RCL)** |
| | ) | |
| **ISAAC STURGEON,** | ) | |
| | ) | |
| **Appellant.** | ) | |
| | ) | |

### DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL

Isaac Sturgeon respectfully moves this Court, pursuant to 18 U.S.C. §§ 3141(b) and 3143(b) for a motion for release pending appeal, and for stay of execution of his sentence under Federal Rule of Criminal Procedure 38. Mr. Sturgeon's request for release is based on two of the claims to be raised on appeal, (1) that 18 U.S.C. § 1512 (c)(2) is not applicable to Mr. Sturgeon's conduct on January 6, 2021, and (2) that the Court's application of an additional six level enhancement at sentencing for "official victim" pursuant to U.S.S.G. § 3A1.2 (c) (1) was erroneous.

The Court need not resolve the merits of Mr. Sturgeon's claims to release him pending his appeal. This Court need only find that his appellate claim raises a "substantial question of law," that, if decided in his favor would likely result in a new trial or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. Mr. Sturgeon respectfully submits that the appeal does raise such a question for the reasons stated below.

## **Background**

On January 6, 2021, Mr. Sturgeon attended a rally to which he was invited by former President Trump, where he listened to several speeches encouraging the crowd to march to the Capitol building following the speech. Prior to January 6, 2021, Mr. Sturgeon did not express any intention to interfere with the electoral vote. In fact, he stopped in Washington, D.C. on a whim while on his way to his final destination of Africa, a trip he had been planning for some time.

After the speech, Mr. Sturgeon followed hundreds of individuals to the Capitol Grounds. While on the grounds, Mr. Sturgeon mostly remained quiet, observing the crowd, taking photographs and videos. While standing next to several boisterous individuals heckling the police, including Mr. Johnatakis who was riling up the crowd, Mr. Sturgeon continued to remain calm, even at one point removing a dangerous object from the side of the rioters. In just a matter of seconds, the crowd picked up a bike rack in an effort to push past police officers. In an uncertain and chaotic situation, Mr. Sturgeon grabbed the bike rack that was in front of him and was pushed back almost immediately by the line of police on the other side of the rack. Mr. Sturgeon immediately put his hands up in the air as a sign of submission. Mr. Sturgeon consistently expressed to the police that he did not want to hurt them.

Afterwards, Mr. Sturgeon remained on the grounds continuing to observe a chaotic crowd on the lower west terrace tunnel. He photographed and took videos of what he observed and commented that what he observed was a revolution. He never entered the Capitol Building even though he had ample opportunity to do so. Afterwards, Mr. Sturgeon left the Capitol Grounds, stayed in D.C. for a couple days to sight see, and then traveled to Africa as planned. He posted

photographs of his observations on January 6, 2021, on his Instagram account. In private messages between family and friends, Mr. Sturgeon again commented on what he saw and heard that day, speaking in general terms about the tense state of our country.

On May 24, 2023, Mr. Sturgeon was convicted by the Court of (1) Obstruction of an Official Proceeding, (2) Assaulting, Resisting, or Impeding Certain Officers, (3) Civil Disorder, (4) Entering or Remaining in a Restricted Building or Grounds, (5) Disorderly or Disruptive Conduct in a Restricted Building or Grounds, (6) Engaging in Physical Violence in a Restricted Building or Grounds, (7) Act of Physical Violence in the United States Capitol Grounds or Buildings.

At a sentencing hearing on September 26, 2023, the Court imposed a sentence of 72 months' incarceration, followed by 36 months' supervised release. Mr. Sturgeon is scheduled to report to serve this sentence on January 4, 2024.

## Argument

Under 18 U.S.C. § 3143(b)(1), a court shall order release pending appeal if it finds:

(A)     by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and

(B)     that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –

(i)      reversal,

(ii)     an order for a new trial,

(iii)    a sentence that does not include a term of imprisonment, or

(iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). "If the judicial officer makes such findings, such judicial officer shall order the release of the person . . . ." *Id*. After determining that a defendant is neither a flight risk

nor a danger to the community, courts use a two step-inquiry to determine whether to release that defendant pending appeal under § 3143(b)(1): "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to [one of the options enumerated in § 3143(b)(1)(B)(i)–(iv)]?" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). "[A] substantial question is a close question or one that very well could be decided the other way." *Id*. (internal quotation marks omitted).

### I.    <u>Mr. Sturgeon Does Not Pose a Flight Risk or Danger to the Community.</u>

Mr. Sturgeon has demonstrated by clear and convincing evidence that he will not flee or pose a danger to the community by virtue of his perfect compliance with the pretrial release conditions that have been in place since the outset of this case. "Under 18 U.S.C.A. § 3143(b) (1985), the defendant must show 'by clear and convincing evidence' that he or she 'is not likely to flee or pose a danger to the safety of any other person or the community if released. . . .'" *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir. 1985)) (quoting § 3143(b) (1)).

As the Court is aware, Mr. Sturgeon lives in Dillon, Montana, where he lives with his parents while actively involved in the new construction of his new home. Mr. Sturgeon continues to manage his own lawn care business. At this time, Mr. Sturgeon remains in compliance with his conditions of release.

Mr. Sturgeon is remorseful for being involved in what was a very tragic day for this country. In his letter to the Court, Mr. Sturgeon expressed his regret for his actions and his wish that he would have just left the area after Trump's rally at the Ellipse.

Mr. Sturgeon's family and friends all agree that this event is not representative of his true character. They all paint him in a positive light and describe him as being polite and respectful, and a valuable member of the Dillon, Montana community.

Lastly, on January 6, 2021, Mr. Sturgeon traveled alone, and did not have any leadership role. Mr. Sturgeon was cooperative with the investigation and has attended all of his pre-trial court hearings with courteousness.

Based on the past three years, the Court can be assured that Mr. Sturgeon is unlikely to repeat the same conduct. Ever since January 6, 2021, Mr. Sturgeon has been a productive member of society.

Mr. Sturgeon, by virtue of his compliance with his conditions of release, steady full-time employment, and family support, both on January 6th and since, has demonstrated by clear and convincing evidence that he does not pose a flight risk or danger to the community.

II.   **Mr. Sturgeon Raises on Appeal "Substantial Questions" of Whether the 18 U.S.C. § 1512(c)(2) Is Inapplicable to Mr. Sturgeon's Conduct and Whether the Application of U.S.S.G. § 3A1.2 (c) (1) at Sentencing Was Erroneous.**

Mr. Sturgeon submits that because this appeal is not for purposes of delay and because he presents no issue of dangerousness or potential flight, the only question is whether his appeal raises a substantial question of law that, if decided in his favor, would be likely to result in a new trial, or a term of imprisonment that is less than the expected duration of the appeal process.

A "substantial question" within the meaning of § 3143(b) is "'a close question or one that very well could be decided the other way.'" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam) (quoting *Bayko*, 774 F.2d at 523). This standard does not require that the Court find that Mr. Sturgeon's appeal establishes a likelihood of reversal before it may grant him release pending appeal. *See Bayko*, 774 F.2d at 522-23. Rather, the Court must "evaluate the

difficulty of the question" on appeal and grant release pending appeal if it determines that the

question is a close one or one that "very well could be" decided in the defendant's favor. *United*

*States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986).

> **A. The Supreme Court will likely grant certiorari in *United States v. Fischer* to decide whether or not 18 U.S.C. §1512(c)(2) exceeds the scope of the conduct of January 6 defendants.**

In *United States v. Fischer*, 64 F.4th 329, 336 (D.C. Cir. 2023), the D.C. Circuit reversed

the District Court's ruling (in several cases consolidated on appeal) that 18 U.S.C. §1512(c)(2)

does not apply to the conduct alleged against January 6 defendants because it only applies to acts

covered by subsection (c)(1), such as altering or destroying documents. However, the defense in

*Fischer* filed a petition for writ of certiorari to the Supreme Court of the United States, which has

stayed the mandate issued by the D.C. Circuit. The Supreme Court is now deciding whether or

not it will review the decision in *Fischer* that will not only affect every January 6 defendant

charged with 18 U.S.C. §1512(c)(2), but also will affect Donald Trump's pending criminal

matter where he is also charged under the same statute.  Given the vast amount of cases this

decision would affect as well as the implications for charging a former President, the Supreme

Court will likely grant the writ of certiorari and review *Fischer*.[1]

Prior to trial in this matter, Mr. Sturgeon also argued that the Court should dismiss 18

U.S.C. § 1512(c)(2) for the same reasons outlined in *United States v. Garret Miller*, 1:21-cr-119

(CJN), which was later consolidated in the *Fischer* appeal. *See* ECF No. 64. The Court denied

Mr. Sturgeon's motion to dismiss and he was convicted of 18 U.S.C. § 1512(c)(2) after a bench

---

[1] The Supreme Court has not yet indicated exactly when it will make its decision. However, the fact that the Supreme Court had a conference on December 8, 2023, to discuss whether to grant certiorari or to deny it and has "relisted" the discussion, indicates that it could be weeks or months before it makes a final decision.

trial. Now that the Supreme Court will likely review whether or not this Court and many others erred in upholding the applicability of this statute, a substantial question has arisen that could very well be decided either way.

> **B. Mr. Sturgeon will challenge whether the Court erred at sentencing when it applied U.S.S.G. § 3A1.2 (c)(1) to enhance his overall offense level by six levels.**

At sentencing, the Court determined that Mr. Sturgeon's sentencing guidelines were 108-135 months. In this determination, the Court found that a Chapter 3 Adjustment for "Official Victim" applied pursuant to U.S.S.G. § 3A1.2 (c)(1), which added 6 levels to Mr. Sturgeon's total offense level. The Court did so even though the highest producing guideline, U.S.S.G. § 2J2.2, already accounts for an 8 level upward adjustment for the exact same conduct as the 6 level adjustment under § 3A1.2(c)(1) and even though the language of the adjustment itself was not applicable to Mr. Sturgeon's conduct. Had the Court not done so, Mr. Sturgeon's overall offense level would have been 25, which would have produced a substantially lower guideline range of 57-71 months.

Firstly, Mr. Sturgeon was given an 8 level enhancement under U.S.S.G. § 2J1.2 (b)(1)(B) for "causing or threatening to cause physical injury…in order to obstruct the administration of justice." This enhancement was applied solely based on the finding that Mr. Sturgeon assaulted a law enforcement officer. None of Mr. Sturgeon's other conduct while on the Capitol Grounds would have otherwise supported this enhancement. Therefore, it would be improper to then add an additional 6 level enhancement under § 3A1.2, which gives an extra punishment for the victim being law enforcement. This is especially true in January 6 cases where every assault or threat to cause physical injury would have been against law enforcement. The Court applied this enhancement in the absence of prior binding precedent and in direct contradiction to other

district court sentencings where this extra adjustment was not applied. For this reason alone, whether or not the Court erred in applying this enhancement presents a substantial question on appeal.

Secondly, even if the Court was permitted to apply § 3A1.2, the adjustment does not apply to the facts of Mr. Sturgeon's case. There can be no credible claim that Mr. Sturgeon "created a substantial risk of *serious bodily injury*" as required by § 3A1.2(c)(1). The Court found that Mr. Sturgeon pushed a bike rack towards a group of approximately 50 police officers among a large group of other individuals. Officer Gonzalez testified that he felt pain as a result. Mr. Sturgeon did not create a substantial risk of serious bodily injury, which is defined as "injury involving extreme physical pain or the protracted impairment of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1(M). Officer Gonzalez felt pain as a result of the crowd pushing this bike rack but did not seek medical attention and continued to resume his duties after the incident occurred. Courts have found that "serious bodily injury" must be akin to life-threatening or disabling conditions. *See Swinton v. United States*, 902 A.2d 772, 775 (D.C. 2006).

In a recent case involving a police officer convicted of excessive use of force, the district court declined to find that serious bodily injury occurred even though the injured individual obtained treatment at Howard Hospital for a cut to his head but was discharged within a couple of hours. The Court found the injury did not rise to the level of long hospitalization, extreme physical pain, or disability, and therefore did not find that serious bodily injury occurred. *United States v. Andra Vance*, 19-cr-251 (RDM). In the instant matter, Officer Gonzalez did not even seek any medical attention but rather resumed his duties that afternoon. There was also no visible injury but rather pain felt as a result of being pushed. For these additional reasons, the Court

should not have applied this 6 level enhancement that requires a finding of a "substantial risk of serious bodily injury."

### III.    The Substantial Questions Mr. Sturgeon Has Raised Are Likely to Result in a Reduced Sentence to a Term of Imprisonment Less Than the Expected Duration of the Appeal Process.

Based on *Fischer*, the Supreme Court very well could find that 18 U.S.C. § 1512(c)(2) is inapplicable to Mr. Sturgeon's conduct. If so, reversal of his § 1512(c)(2) conviction will result in, at a minimum, a reduced sentence for him. This is because Mr Sturgeon's guideline range was more severe because this conviction necessitated the application of U.S.S.G. § 2J1.2. If not for this guideline, the Court would have likely applied U.S.S.G. § 2A.2, the aggravated assault guideline, which would have produced a substantially lower sentencing guideline range. According to the aggravated assault guideline, Mr. Sturgeon would be assessed a base offense level of 14 points. Even if the Court applied the 6 level adjustment under 3A1.2(a) for "Official Victim," Mr. Sturgeon's adjusted offense level would be 20 – resulting in a guideline range of 33-41 months. After the Court's application of the aberrant behavior departure that it granted at sentencing, it is likely that any new sentence would result in "a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process." *See* 18 U.S.C. § 3143(b)(1).[2]

---

[2] Over the last 13 years, the average median time from filing a notice of appeal to disposition in the United States Court of Appeals for the District of Columbia Circuit has been 12 months. Ballotpedia, *United States Court of Appeals for the District of Columbia, Caseloads*, October 16, 2023 available at https://ballotpedia.org/United_States_Court_of_Appeals_for_the_District_of_Columbia_Circuit (last viewed on October 18, 2023).

Also, if the Supreme Court of the United States grants a writ of certiorari in *Fischer,* the Court may very well take much longer to issue an opinion than the average time of an appeal in the D.C. Circuit.

Alternatively, even if *Fischer* is not decided in Mr. Sturgeon's favor, the D.C. Circuit could very well agree with him that the application of the 6 level enhancement under § 3A1.2(a) in addition to the 8 level enhancement under § 2J1.2(b)(1)(B) was improper. If so, Mr. Sturgeon's guideline range would be 57-71 months. After application of the aberrant behavior departure, Mr. Sturgeon's sentence would also result in "a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process." *Id*.

Thus, a favorable ruling on either of the issues Mr. Sturgeon intends to pursue on appeal will result in a sentence lower than the expected duration of the appeal process. For these reasons, the Court should allow Mr. Sturgeon to remain on release pending appeal.

## <u>Conclusion</u>

For these reasons and any others the Court deems just and proper, Mr. Sturgeon asks that the Court grant this motion and order Mr. Sturgeon's release pending resolution of his appeal.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Maria Jacob
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500
maria_jacob@fd.org