UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | No. 21-cr-91-RCL |
| v. | : | |
| | : | |
| **ISAAC STURGEON,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
MOTION FOR RELEASE PENDING APPEAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Isaac Sturgeon's motion for release pending appeal. ECF 241. On May 24, 2023, following a four-day bench trial, this Court convicted Sturgeon on seven counts, including obstruction of justice and assaulting police officers. ECF 166. On September 26, 2023, this Court sentenced Sturgeon to concurrent terms of: 72 months on Count 1 (Obstruction of Congress); 72 months on Count 2 (Assault on Federal Officers); 36 months on Count 3 (Civil Disorder); 6 months on Count 4 (Entering and Remaining on Restricted Grounds); 6 months on Count 5 (Disorderly and Disruptive Conduct on Restricted Grounds); 6 months on Count 6 (Engaging in Physical Violence on Restricted Grounds); and 30 days on Count 8 (Engaging in Act of Violence on Capitol Grounds).

The Defendant was scheduled to self-surrender on November 7, 2023. On October 17, 2023, Sturgeon filed a motion to significantly delay his self-surrender date by two months until after the holidays. ECF 213. The Government opposed that motion. ECF 217. The Court granted the motion on October 25, 2023. ECF 220. The Defendant is now scheduled to self-surrender on January 4, 2024. Both of Sturgeon's co-defendants, Craig Bingert and Taylor Johnatakis, are currently incarcerated. Bingert self-surrendered on November 7, 2023, following his sentencing

1

on September 26, 2023 (the same day as Sturgeon's sentencing), and Johnatakis is in custody pending sentencing, following his conviction by a jury on all counts on November 21, 2023.

For the reasons set forth below, including the Defendant's failure to show that his appeal "raises a substantial question of law or fact likely to result in" reversal or a reduced sentence, the Defendant's motion for release pending appeal should be denied. 18 U.S.C. § 3143(b)(1). Critically, even if this Court were to assume that the Defendant would succeed on both grounds that he plans to raise on appeal, the Defendant has not shown that his convictions on *all seven* counts would likely be reversed or that the sentences on *all seven* counts are likely to result in a reduced sentence less than the expected duration of the appeal process. Accordingly, for this reason and the reasons discussed further below, the Defendant's motion for release pending appeal is without merit and should be denied.

I.     BACKGROUND

A brief summary of the Defendant's criminal conduct is necessary here in light of the Defendant's continued minimization of his assaultive and obstructive conduct—including in this motion, where he contends that he only "grabbed the bike rack," ECF 241 at 2-3, but neglects to describe his role in the forceful assault on the police that followed.

Sturgeon traveled to Washington, D.C., attended the Stop the Steal rally on the morning of January 6, 2021, and then marched to the U.S. Capitol. There, he made his way through the dense crowd to the front of the police line at approximately 2:31 p.m. Shortly thereafter, rioters overwhelmed the police line, and the police were forced to retreat up the southwest stairs. Sturgeon followed closely behind the retreating officers, climbing through the scaffolding while filming a video on his phone at 2:35 p.m.—seconds after the last officers ran up the southwest stairs to the Upper West Terrace. Sturgeon then climbed up the two flights of stairs on the southwest side of

the U.S. Capitol building and was one of the first handful of rioters to approach the police line established at the top of the stairs following the police retreat.

At the top of the stairs, Sturgeon encountered the two-layered bike barricade with an "AREA CLOSED" sign on it and the rows of police officers behind the barricade.  Sturgeon made his way to the top of the steps so that he was right in front of the barricade and the police.  Video footage from body worn camera shows that at approximately 2:45 p.m., co-defendant Johnatakis called other rioters to move forward, and Sturgeon confirmed with Johnatakis that he (Sturgeon) would "push."  Immediately after Sturgeon said "push," he noticeably and deliberately removed both of his hands from his pants pockets and reached toward the bike rack.  Sturgeon then realized that it was not yet time to push and so stealthily put his hands back in his pockets and waited for Johnatakis's count. *See* Government Trial Exhibit 204A at timestamp 14:46:20.  After this false start, Johnatakis counted the rioters down saying, "1, 2, 3, GO," and Sturgeon, along with his co-defendants, grabbed the bike rack and used it to assault the police.  Sturgeon, along with his co-defendants, attempted to duck underneath the bike rack toward the police line during the assault.

Sturgeon remained on the stairs to the Upper West Terrace until approximately 3:01 p.m., when he walked around the corner to the area overlooking the tunnel.  Sturgeon stood on a ledge close to the mouth of the tunnel for at least 90 minutes, looking down on the assaults against the police below.  During this time, Sturgeon took at least four videos of rioters assaulting police at the tunnel, and he posted some of these to his Instagram account.  During one video, which showed a police officer in some kind of enclosed space on the Lower West Terrace, Sturgeon narrated, "The people grabbed one of the cops and drug him down the steps, but they put him inside here to take care of him. Because we love the police, but this is a fucking revolution."

At approximately 5:00 p.m., police officers were attempting to clear the area on the Upper West Terrace where Sturgeon was located. They ordered Sturgeon to get down off the ledge several times, but Sturgeon refused to comply, and at one point, he affirmatively turned and walked away from the officers, farther down the ledge out of their reach. Finally, one of the officers physically pulled Sturgeon down off the ledge. The police then had to physically push Sturgeon and other rioters out of the area. Sturgeon was removed from the Upper West Terrace at approximately 5:10 p.m.

Significantly, Sturgeon also sent several texts after January 6 that appeared to advocate for future violence against the government. For example, on January 8, Sturgeon texted about January 6, "Republicans get mad and commit felonies just so you're aware" and "Its time" and "We will make the best of it and or fight. Crimes half [sic] to be committed to start a revolution." On January 9, he texted, "Yeah peace hasn't worked for us. We are dying." He followed up with "Yeah I understand the code talk ideology and all that haha but blood shed is the only way now. Biblical."

Sturgeon made similar statements on his social media accounts. For example, on January 7, Sturgeon sent Facebook messages telling others, "A revolution never started peacefully" and, referring to January 6, "Definitely wild and a little bloody. Needed to happen [prayer hands emoji]."

As detailed above, on May 24, 2023, the Court found Sturgeon guilty of seven counts, including obstruction of justice and assaulting federal officer. He was sentenced to 72 months imprisonment on September 26, 2023, and he filed a notice of appeal on October 4, 2023.

4

## II.   LEGAL STANDARD

Once a defendant has been convicted and sentenced, he has no presumptive right to remain free on bail.  Indeed, the Bail Reform Act of 1984 "creates a presumption against release pending appeal." *United States v. Chilingirian.* 280 F.3d 704, 709 (6th Cir. 2002). By statute, the defendant "shall . . . be detained" unless the court makes a series of findings in his favor:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds-
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c); and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
> If the judicial officer makes such findings, such judicial officer shall order the release of the person[ . ]"

18 U.S.C. § 3143(b)(1).  The defendant bears the burden of satisfying these statutory elements. *See Morison v. United States*, 486 U.S. 1306, 1306–07, 108 S.Ct. 1837, 100 L.Ed.2d 594 (1988).

The D.C. Circuit has adopted a two-part inquiry to determine whether a defendant's appeal raises a substantial question of law or fact likely to result in any of the various forms of relief enumerated in § 3143(b)(1)(B)(i)-(iv): "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal?" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). "[A] substantial question is a 'close' question or one that very well could be decided the other way." *Id.*  The standard is one that is "more demanding" than one that merely requires the issue to be "fairly debatable" or "not frivolous." *United States v. Libby*, 496 F. Supp. 2d 1, 4 (D.D.C. 2007).  The

5

*Perholtz* Court chose that standard, which it regarded as the "more demanding standard," as "it appears better to accord with the expressed congressional intent to increase the required showing on the part of the defendant" and in recognition that "[t]he law has shifted from a presumption of release to a presumption of valid conviction." 836 F.2d. at 555-556.  Likewise, it is the defendant who "bears the burden of rebutting this presumption and 'demonstrat[ing] that he has a substantial question to present [upon appeal] before he may be admitted to bail.'" *Libby*, 498 F.Supp.2d at 3 (citing and quoting *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986)).

### III.     ARGUMENT

Defendant Sturgeon has not met his burden with respect the statutory requirements for release pending appeal, and his motion should be denied.  Fatal to the Defendant's motion is the fact that—even assuming he succeeds on his claims on appeal—his success would not lead to a reduced sentence that is less than the expected duration of the appeal process.  In addition, Sturgeon's motion does not demonstrate by clear and convincing evidence that he is not likely to flee or pose a risk to others, nor that his as-yet-unfiled appeal is not for the purposes of delay.  His motion should be denied.

### A. Defendant's Claims Fail to Raise Substantial Questions of Law or Fact Likely to Result in Reversal or a Reduced Sentence.

The Defendant has failed to meet his burden to show that the two issues he plans to raise on appeal articulate a substantial question that is likely to result in a reversal, a new trial, or a reduced sentence that is less than the expected duration of the appeal process.

### 1.     Regardless of whether Sturgeon's §1512(c)(2) claim succeeds on appeal, Sturgeon's sentences on his other counts of conviction are years longer than the expected duration of the appeal process.

Sturgeon represents that he will raise a claim on appeal that 18 U.S.C § 1512(c)(2) is not applicable to his conduct on January 6, 2021.  As this Court is aware, the Supreme Court granted

6

certiorari in *Fischer v. United States*, No. 23-5572 (December 13, 2023). But the fact that the Supreme Court granted certiorari in *Fischer* does not establish that the Defendant's Section 1512(c)(2) conviction will be dismissed or changed. At this time, a panel of the D.C. Circuit and every district court judge but one has agreed with the Government's interpretation of that statute. *See United States v. Fischer*, 64 F.4th 329, 338 (D.C. Cir. 2023) ("Although the opinions of those district judges are not binding on us, the near unanimity of the rulings is striking, as well as the thorough and persuasive reasoning in the decisions. . . . The district judge in the instant case stands alone in ruling that § 1512(c)(2) cannot reach the conduct of January 6 defendants."). The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that those opinions were wrongly decided. *See, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question."). Given the broad question presented by Petitioner in *Fischer*, a myriad of possible rulings could occur—including numerous outcomes that would not undermine Sturgeon's conviction on Count 1.

Moreover, obstruction of Congress, Section 1512, was not the Defendant's only conviction. Sturgeon was separately convicted of six other criminal counts—including two additional felonies. In addition to his sentence of 72 months on Count 1 for obstruction of Congress, Sturgeon was sentenced to 72 months on Count 2 (assaulting officers) and 36 months on Count 3 (civil disorder). Critically, the Defendant fails to show that resolution of his appellate questions in his favor is likely to lead to reversal "of *all counts* on which imprisonment is imposed." *United States v. Brock*, 2023 WL 3671002, at *1 (D.C. Cir. May 25, 2023) (emphasis in original) (citing and quoting *United States v. Perholtz*, 836 F.2d at 556-557). In *Brock*, the D.C. Circuit assumed assumed without deciding that Brock's appeal raised a substantial question of law regarding the

7

scope of Section 1512(c), but it denied his motion for release pending appeal because Brock did not show that a favorable ruling was likely to lead to a reversal on all counts. *Brock*, 2023 WL 3671002, at *1. In addition, he failed to show the likely amount of any reduced sentence for the remaining counts. *Id*. In other words, here, even if this Court assumes for purposes of this motion that Sturgeon will succeed on appeal with overturning Count 1 (Section 1512), the Defendant will still have to serve six years on Count 2 (assaulting officers) and three years on Count 3 (civil disorder)—far longer than "the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1). Accordingly, the Defendant's claim fails, and the Court should deny his motion.

> 2. **Application the official victim enhancement does not raise a substantial question of law or fact, and regardless, success on this claim would not result in a reduced sentence less than the expected duration of the appeal process.**

Sturgeon's second claim also fails to satisfy his burden. Sturgeon plans to claim that this Court erred in applying the six-level enhancement for "official victim" pursuant to U.S.S.G. § 3A1.2(c)(1). First, Sturgeon argues that application of this enhancement was legally improper because the Court also applied U.S.S.G. § 2J1.2(b)(1)(B), which covers the same conduct. The Chapter 3 Adjustment provides, "If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable – knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom . . . increase by 6 levels." U.S.S.G. § 3A1.2(c)(1). Separately, the Chapter 2 Specific Offense Characteristic for the Obstruction of Justice Guideline provides: "If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice, increase by 8 levels." U.S.S.G. § 2J1.2(b)(1)(B). Citing no legal authority, the Defendant plans to argue on appeal that application of both the Chapter 3 Adjustment and the

8

Chapter 2 Specific Offense Characteristic constitutes "double counting" because it covers the same assault. But in fact, each Guideline punishes a distinct harm—one for causing physical injury in the course of the obstruction, and a separate one for creating a substantial risk of serious bodily injury to a law enforcement officer. Indeed, the Guidelines themselves provide for the application of multiple adjustments from multiple Guidelines, specifically stating: "Absent an instruction to the contrary, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be applied cumulatively. In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct." U.S.S.G. § 1B1.1, comment 4(B). The Defendant has not cited even a single case finding that these two Guideline provisions cannot apply cumulatively. For all these reasons, the Defendant fails to show that this is a substantial question of law.

Second, Sturgeon argues that the facts of this case do not support application of U.S.S.G. § 3A1.2(c)(1). In the motion, the Defendant argues that there was no serious bodily injury here (ECF 241 at 8-9)—but in doing so, he ignores that the Guideline requires instead "*a substantial risk* of serious bodily injury." Here, the facts clearly support the application of this Adjustment. The officers were located at the top of a set of stairs, so they were in a vulnerable and precarious situation during the assault, creating a substantial risk of serious bodily injury. Sturgeon and others coordinated an attack on those officers using metal bike racks—lifting them up to eye and head-level and using them to assault the officers. At least one officer was in fact injured, and another officer testified at trial about the assault: "It was frightening. I thought we were going to die." May 15, 2023 Transcript at 180:23-24. Again, the Defendant fails to show that this factual determination made by the Court raises a substantial question.

9

Finally, even if the Court were to assume for purposes of argument that these claims related to U.S.S.G. § 3A1.2(c)(1) could rise to the level of a substantial question of law or fact, the Defendant has not shown that success is likely to result in a reduced sentence that is less than the expected duration of the appeal process. If the Defendant succeeds on the first argument, that there was impermissible "double-counting," and the six-level adjustment pursuant to U.S.S.G. § 3A1.2(c)(1) were removed from Count 1—the offense level on Count 1 (Obstruction) would be 25—resulting a Guidelines range of 57-71 months. Counts 2 and 3 would remain unchanged at offense level 27 with a Guidelines range of 70-87 months. If the Defendant succeeds on the second argument, that the Court erred in finding that the facts support application of § 3A1.2(c)(1), the resulting offense level on Count 1 (Obstruction) would be 25—resulting a Guidelines range of 57-71 months—and on Counts 2 (Assault) and 3 (Civil Disorder), it would be 21—resulting in a Guidelines range of 37 to 46 months.

### B. Sturgeon Has Not Demonstrated that He Is Not a Flight Risk or Danger to the Community.

In addition to demonstrating that his appeal raises a substantial question that will likely lead to reversal or a reduced sentence on all counts of conviction, the defendant must also demonstrate to the Court "by clear and convincing evidence" that he is neither a flight risk nor a danger to the community. "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c). Sturgeon fails to meet his burden here.

Now that Sturgeon has been convicted and sentenced to a significant period of incarceration, rather than merely charged with crimes, the incentive to flee or engage in dangerous conduct has grown. That concern is particularly salient here where Sturgeon has repeatedly sought to delay the imposition of sentence while also continuing to minimize his

conduct on January 6—as evidenced by his description of his actions in this motion. ECF 241 at 2-3.[1] He has yet to accept responsibility for his actions or express remorse for what he did—to the Court or to the victim officers he assaulted. In addition, while he does have family ties in the United States, he has traveled internationally previously and failed to return to the United States when he learned of his arrest warrant. Specifically, on January 26, 2021 Sturgeon texted a friend in law enforcement and asked if there was a warrant out for him. His friend confirmed that he was wanted by the FBI. Sturgeon did not self-surrender, but instead was arrested after deboarding a plane from Africa almost six weeks later on March 6, 2021. Sturgeon also has ties in Namibia, where his daughter and the mother of his daughter live.

### C. Sturgeon Has Failed to Demonstrate that His Appeal Is Not for Purposes of Delay.

Finally, Sturgeon must demonstrate that his appeal is not for purposes of delay. Again, the defendant bears the burden of proof on this issue and again, defendant offers no meaningful argument to meet that burden. *United States v. Nacchio*, 608 F.Supp.2d 1237, 1242 (D. Colo. 2009) (defendant "offers neither an affirmative statement that the appeal is not interposed for purpose of delay, nor any meaningful argument."). Rather, Sturgeon does nothing more than to insist "that this appeal is not for the purposes of delay." ECF 241 at 5. That is insufficient. The Defendant has not yet filed his brief on appeal, but as demonstrated above none of the issues that he has indicated he intends to raise on appeal present a substantial question that is likely to lead to a reversal or reduced sentence that is less than the duration of his appeal. In addition, further delay is unfair to both his co-defendants (Bingert and Johnatakis)—who are already incarcerated

---

[1] Likewise, a family member soliciting funds on Sturgeon's behalf minimizes his conduct, describing him as "standing quietly with his hands in his pockets" and asserting that he did not assault police, but "had to put his hands out to protect himself from injury." *See* https://www.givesendgo.com/GB6TM (describing the charges as "bogus," the trial a "sham," and the government "corrupt").

and were convicted of all the same crimes—as well as to the public and the victims, which has an interest in justice and the purposes of sentencing being served here.  Finally, Sturgeon has a history of filing last-minute requests seeking to delay imposition of his sentence.  *See* ECF 197 (emergency motion to continue sentencing hearing filed one day before sentencing hearing); ECF 213 (motion to delay self-surrender date); and ECF 241 (motion for release pending appeal).  On that record, the Defendant's failure to offer more than a conclusory statement to the contrary falls short of meeting his burden.

### IV.     CONCLUSION

Accordingly, the Defendant's motion for release pending appeal should be DENIED.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:     */s/ Kaitlin Klamann*
        KAITLIN KLAMANN
        Assistant United States Attorney
        601 D Street NW
        Washington, D.C. 20530
        IL Bar No. 6316768
        (202) 252-6778
        Kaitlin.klamann@usdoj.gov

By:     */s/ Courtney A. Howard*
        COURTNEY A. HOWARD
        Trial Attorney, Criminal Division
        Detailed to the U.S. Attorney's Office
        601 D Street NW
        Washington, D.C. 20001
        NY Bar No. 4513909
        202-514-3130
        Courtney.Howard2@usdoj.gov